**People of the State of Illinois, Defendant in Error, v. Gerald Van Bussum, Plaintiff in Error.**

Gen. No. 50,598.

First District, Third Division.
June 30, 1966.
Rehearing denied September 12, 1966.

Edward B. Lane, of Westmont, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Albert J. Armonda, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant, Gerald Van Bussum, was indicted and tried for the offenses of involuntary manslaughter and reckless homicide, and was found guilty by a jury of involuntary manslaughter. Defendant's motion for a new trial and motion in arrest of judgment were denied and the court entered judgment upon the verdict of the jury. Defendant was sentenced to the Illinois State Penitentiary for a term of not less than one nor more than five years.

The contentions of the defendant on appeal are: (1) That the instruction given by the court in regard to involuntary manslaughter was faulty in that it failed to require a showing of criminal liability by not including wilful and wanton conduct as the basis for said offense; (2) that it was error to allow the State to display, throughout the trial, an unopened gin bottle and an empty whiskey bottle, in full view of the jury; (3) that the court erred in denying a request made by him during the course of the trial to have his fingerprints compared with those on the empty whiskey bottle; (4) that the court erred in allowing a witness to testify, after an alleged order entered separating witnesses was violated; (5) that he was denied the right to impeach the credibility of certain witnesses after he offered to prove their bias and hostility.

The facts adduced on behalf of the State are: Arthur Vogel, a friend of the defendant, testified that on February 12, 1962, at approximately 7:00 p. m., the defendant picked him and David Schlosser up in defendant's auto,

430

and the three proceeded to a liquor store in Justice, Illinois. There they obtained three bottles of ginger ale, one fifth of whiskey, and one small bottle of gin. Vogel subsequently admitted that the whiskey and gin had been stolen from the store. According to Vogel, they then went to the driveway of a friend, where they parked the auto, opened the bottles of whiskey and ginger ale, and drank highballs. They each had approximately one-third of the fifth of whiskey, and there were two or three ounces left in the whiskey bottle when it was thrown out of the auto.

At about 9:00 p. m. they went for a ride through Willow Springs, Illinois. Vogel testified that the defendant drove on Route 83 at times at about 105 miles per hour, and drove off the road several times. He stated that he yelled at the defendant to slow down. He was taken home at approximately 10:00 p. m.

David Schlosser, the other passenger, corroborated the testimony of Vogel as to the obtaining and drinking of the liquor. He stated that they each had about one-third of the whiskey. Schlosser testified that the defendant traveled at about 70 to 75 miles per hour on Route 83; that he told the defendant to slow down, and that the defendant might have gone off the road a couple of times. He was then dropped off by the defendant.

The accident in question occurred when defendant's auto struck that of Helmut Priedigkeit at the corner of the north-south street of Roberts Road and the east-west street of 71st street. The victim was seriously injured and subsequently died as a result of the crash. Roberts Road is a two-lane avenue divided by a white line. The streets were clear and dry, though snow was piled on the shoulder of the road.

Immediately preceding the accident, traveling north on Roberts Road, was a Cook County Sheriff's police car, a Village of Bridgeview police car, and a red Buick. The defendant passed all three of these cars at a high

rate of speed. Police Officer Nispuruk of Bridgeview testified that the defendant was going 85–90 miles per hour, and the defendant passed him going north on the officer's left, that is, in the lane normally used for southbound traffic. A Cook County Sheriff's police officer, Homer Lander, said he was passed at 85–90 miles per hour, and the driver of the red Buick testified that the defendant passed him at 80–90 miles per hour.

Immediately after the defendant passed the Bridgeview police car, Nispuruk turned on his red mars light, as did also the sheriff's officer, and both gave chase to defendant's auto. Nispuruk testified that defendant never righted himself (i. e. got back into the north-bound lane), nor did he slow down, prior to the collision. The defendant struck the victim's Cadillac with such force that the Cadillac just "blew up" in the words of Nispuruk.

The victim was making a left turn from 71st street to go south on Roberts Road when he was struck by defendant. The defendant's auto was straddling the white line in the center of the road when it hit the victim's auto. The center of the Cadillac on the driver's side was "crushed beyond description," according to Officer Nispuruk.

Officer Nispuruk testified that he observed the defendant get out of his auto after the collision and throw away an empty ginger ale bottle. Further, he noted that the defendant walked unsteadily and that he detected a liquor smell on the defendant's breath. When Officer Nispuruk searched defendant's auto he found two empty ginger ale bottles and a full gin bottle.

Officer Lander testified that defendant's auto passed him at a very high rate of speed, about 85–90 miles per hour, northbound on Roberts Road at about 10:45 p. m. on the night in question. He immediately put on his mars light and took off after the defendant. The defendant then collided with the auto of the victim. After the impact Officer Lander saw the victim bloody and badly

injured, and heard the screams of two little children who were pinned in the auto. Lander testified that after the accident the defendant got out of his car and said, "Oh, my beautiful engine."

Winan Dressel, driver of the red Buick that was also northbound on Roberts Road, said that the defendant passed him by about 80–90 miles per hour, and that his car "rocked" as the defendant sped by.

Edward Jonatis, the son-in-law of the victim, testified that he was driving immediately in front of the victim on 71st street prior to the accident. He had turned left at the intersection of Roberts Road and 71st street, and proceeded south on Roberts Road. He then saw a set of headlights bearing down upon him, and flashing red lights in the distance. The headlights came upon him so quickly that he was forced to turn his auto toward the shoulder of the road to avoid the oncoming auto. He estimated the speed of the oncoming auto at 90 miles per hour, and stated that it missed him by "less than inches." The speeding auto straddled the white line in the center of the road. The next thing he heard was a big crash.

The defendant was charged with reckless homicide, driving under the influence of alcohol, and passing within 100 feet of an intersection. He was not charged with speeding.

The evidence adduced on behalf of the defendant was: Lisle Van Bussum, father of the defendant, testified that his son had alcohol in the radiator of his auto at the time of the accident. The type of brake fluid which was in his son's auto smelled like alcohol. He stated that he never saw his son drinking. George Streich, who lived two doors away from the defendant, testified that he was a mechanic and that the constituent parts of brake fluid were alcohol and glycerin. The defendant testified that there was no liquor in his auto on the night of February 12, 1962, and that he never touched the empty whiskey

bottle found by the police. (People's exhibit #1.) He stated that at that time he would be willing to have his fingerprints compared with those on said bottle. The objection of the State to this test was sustained by the trial judge. The defendant testified that he only went 70 miles per hour on Route 83. The defendant stated that after he passed up the two squad cars on Roberts Road the victim pulled out from 71st Street and stopped right in front of him. He said that he was going 45 miles per hour on Roberts Road, the speed limit, and after passing the squad cars was back in the proper traffic lane. The defendant then put on his brakes but it was too late to stop. He denied making the statement "Oh, my beautiful engine."

On cross-examination the defendant stated that he was not a drinker, and did not mean to previously say that he never drank. When confronted with a statement that he had made at a coroner's inquest to the effect that he drank intoxicating liquors in the presence of his parents, the defendant admitted that this was true, even though defendant's father testified that he never saw his son drink. Subsequently the defendant stated again that he never drank.

Several character witnesses testified that they were acquainted with the defendant and that they knew his reputation for truth and veracity and that they would believe him under oath.

We cannot agree with the contention of the defendant that the State's instruction pertaining to the offense of involuntary manslaughter was erroneous. Defendant argues that this instruction was faulty since it did not require a finding of wilful and wanton conduct as a basis for manslaughter. The complained of instruction read, in part:

> ". . . if you believe . . . from the evidence that the defendant . . . caused the death of Helmut Preidig-

434

keit without lawful justification while the defendant was in the commission of acts, whether lawful or unlawful, which were likely to cause the death or great bodily harm to some individual, and that such acts were performed recklessly, and if you further believe that the death was the direct result of such acts on the part of the defendant, then under such circumstances the defendant would be guilty of the crime of involuntary manslaughter. . . ."

██ This instruction was proper since it was given in the language of the statute on involuntary manslaughter. This statute provides in part that:

"(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." (Ill Rev Stats 1961, c 38, par 9–3.)

The defendant himself admits that this instruction was within the language of the statute. Since the statute does not contain any reference to "wilful and wanton" conduct, and since the instruction conformed to said statute, the instruction was correct. (People v. Rongetti, 344 Ill 278, 176 NE 298, where the court sustained an instruction for involuntary manslaughter since it was within the language of the statute.) Further, the Committee Comments to paragraph 9–3 of chapter 38 discuss the offense of involuntary manslaughter and the mental state element of this offense. (Committee Comments, Smith–Hurd Anno Stats 1961, c 38, § 9–3, pp 525–532.) At page 529 it is stated: "The words used by the court to describe the mental-state element of this offense have varied, recklessness being used interchangeably with gross negligence, willful or wanton negligence, and criminal negligence. . . ." (Citing cases.) Without en-

tering a lengthy legal discussion concerning the offense of involuntary manslaughter, we merely note that under the Committee's view, as formulated by past court decisions, a specific finding of wilful and wanton conduct is not necessary to convict a party of said offense since recklessness, as contained in par 9–3, and as defined in par 4–6, has been used interchangeably with the phrase wilful and wanton.

■ Also, the defendant offered, and the court gave, an instruction on involuntary manslaughter which read, in part: "Where a person with wilful and wanton negligence disregards the safety of others and runs over another and kills him, even though unintentional, it will be manslaughter." Thus, by defendant's own theory of the law, the jury was adequately instructed. (People v. Simmons, 407 Ill 417, 95 NE2d 477.)

■ The defendant next argues that it was error for the court to allow the State to display, throughout the trial, an unopened gin bottle and an empty whiskey bottle, both in full view of the jury. He cites the case of Smith v. Ohio Oil Co., 10 Ill App2d 67, 134 NE2d 526, for the proposition that if evidence is used for emotional appeal to the jury, rather than for a factual explanation, it is error. An examination of that case, however, leads us to the conclusion that the trial court in this case was correct in allowing the display and the introduction into evidence of the bottles. The court, in discussing real and demonstrative evidence, stated at page 76: "As a result, the use of such evidence is usually left to the discretion of the trial court. . . ." In the instant case the testimony of several witnesses for the State indicated that the whiskey bottle, when empty, had been discarded from the defendant's auto and later picked up by the police, and that a full gin bottle was found in his auto immediately after the accident. These two bottles were directly involved in the State's case, and were thus properly admitted and displayed.

436

■ The admission and use of this evidence was within the discretion of the trial court. It is reviewable only in cases of an abuse of such discretion, or when such evidence is irrelevant or immaterial, or when it is used principally for its emotional effect. (People v. Jenko, 410 Ill 478, 102 NE2d 783; Smith v. Ohio Oil Co., supra.) We do not feel that the two bottles were irrelevant or immaterial, nor were they used for their emotional effect.

■ Similarly, it was also not improper for the trial court to refuse the offer of the defendant, made during the course of his direct examination at the trial, to have his fingerprints compared with those on the whiskey bottle. The record reveals no earlier request by the defendant to examine the bottle, nor any request for facts as to fingerprints on the bottle. The record does reveal that the whiskey bottle had been handled by the prosecution at various times during the course of the trial, and no doubt by other persons between the time of arrest and trial. Certainly the trial court was aware of this when it properly rejected the offer of defendant to have the bottle tested for fingerprints. If the defendant was eager to compare his fingerprints with those on the bottle he should have availed himself of such opportunity at an earlier time.

■ A further assignment of error is predicated upon the refusal of the court to exclude the testimony of the witness Schlosser since said witness allegedly violated an order of the court which instructed witnesses not to discuss the case with anyone during court recesses. After one such recess, counsel for the defendant informed the court that he saw Schlosser coming back from lunch with Vogel, a witness who had previously testified. Counsel thereupon asked that the testimony of Schlosser, the next witness, be excluded on the ground that he had communicated with another witness after the court warned him not to do so. The trial court denied this motion and made it quite clear that its order had not

been violated since it did not order the witnesses not to communicate with each other, but only to refrain from discussing the case with anyone during a recess. Further, the court told defendant's counsel that he would be permitted to ask Schlosser whether he had discussed the case with the previous witness. Schlosser subsequently stated on cross-examination that he had not discussed the case with Vogel. Under these facts we find no error in the decision of the trial court to allow the witness to testify.

The last contention of the defendant is that the court erred in denying him the right to impeach the credibility of certain of the State's witnesses with prior statements made to the police. We have examined the entire record and find that the defendant, although presented with ample opportunity to impeach said witnesses, failed to do so.

The defendant also makes the point that he was prejudiced by the refusal of the court to allow into evidence an offer of proof that the Bridgeview police were biased against the defendant. In our view, the court properly refused this offer of proof since no foundation was laid for its admission, and no connection was apparent between the offer and the instant case.

For the foregoing reasons, the judgment against the defendant is affirmed.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.