THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES F. ZIEGLER, JR., *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 78-1138, 78-1262 cons.

Opinion filed October 22, 1979.—Rehearing denied November 19, 1979.

Robert K. Kelty, of Chicago, for appellant Charles F. Ziegler, Jr.

Meinhardt & Kightlinger, Ltd., of Arlington Heights (John D. Kightlinger, of counsel), for appellant Jeffrey M. Stasik.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Rimas F. Cernius, Mark Komessar, James S. Veldman, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

These consolidated appeals result from convictions after a bench trial

involving Charles F. Ziegler, Jr. (Case No. 78-1138), and Jeffrey M. Stasik (Case No. 78-1262). These defendants were tried together with Thomas Orlando, who is not a party to this appeal. Ziegler was charged with reckless homicide (Ill. Rev. Stat. 1977, ch. 38, par. 9—3); failure to reduce speed to avoid a collision (Ill. Rev. Stat. 1977, ch. 95½, par. 11—601(a)) and improper lane usage (Ill. Rev. Stat. 1977, ch. 95½, par. 11—709). He was found guilty of reckless homicide and sentenced to nonreporting probation for one year. He was acquitted on the balance of the charges.

Defendant Stasik was charged with reckless driving (Ill. Rev. Stat. 1977, ch. 95½, par. 11—503); improper lane usage (Ill. Rev. Stat. 1977, ch. 95½, par. 11—709); drag racing (Ill. Rev. Stat. 1977, ch. 95½, par. 11—504) and leaving the scene of an accident (Ill. Rev. Stat. 1977, ch. 95½, par. 11—401). He was found guilty of improper lane usage and reckless driving and sentenced to one year of nonreporting probation and a fine of $1000 on the reckless driving charge. For improper lane usage, he was given a concurrent sentence of one year nonreporting probation.

In this court, Ziegler contends that the trial court used incompetent and improper evidence in arriving at its findings; evidence of speed was improperly admitted and considered; if only competent evidence had been considered the court would have found the defendant not guilty; and where a condition may be explained on the hypothesis of innocence, the court must accept the explanation. Defendant Stasik contends that the evidence does not support the findings of the trial court beyond a reasonable doubt and the sentence imposed upon Stasik was grossly disparate.

We will first summarize the evidence applicable to both defendants in this joint trial and we will then consider their respective contentions.

Dundee Road is a paved four-lane highway of great length, running east and west. The east and westbound lanes are divided by a median strip. As one drives westward on Dundee Road for about 4 or 5 miles commencing at Skokie Highway, he reaches the Sanders Road traffic light. Dundee goes upgrade and then down to pass over Illinois Toll Road No. 294. About a quarter of a mile west of this slight hill there is an entrance to Dam No. 1 of the forest preserve. This road enters into Dundee Road from the south but does not cross it.

On April 8, 1977, Stasik was driving a Volkswagen. A passenger named Baumeister accompanied him. Ziegler was driving a Mazda and Orlando was driving a Capri. Luben Antonoff (deceased), was sitting in the passenger seat of Ziegler's Mazda. All of these cars were going west on Dundee Road.

Darryl Frank testified for the People that when he was driving west on Dundee Road about at Skokie Highway, he noticed these three automobiles, which he described as a Volkswagen, a Capri and a Mazda. He watched them as they traveled west on Dundee. He testified the cars

were racing and weaving in and out of traffic. He saw these cars cut off at least three other cars. At one time his own car was cut off by the Volkswagen. At times, the speed of these three cars exceeded that of the flow of traffic. All four automobiles halted for the red light on Sanders Road. The witness, Frank, was in the right-hand lane; the Volkswagen, driven by Stasik, was immediately behind him; and the Capri, driven by Orlando, was in the westbound left-hand lane along side of the Volkswagen. The witness saw Stasik speaking to Orlando.

The witness, Frank, attempted to outdistance the defendants when they started. The witness proceeded to the hill over the tollway and reached a speed of 70 miles an hour. As he began to go down the hill, he slackened speed to 65 or 70 and all three of the other cars passed him. They were going a great deal faster than he was and all pulled away from him. At that point, the witness saw a gold colored Chrysler automobile standing in the left-hand lane of the westbound portion of the road. This car was stopped for a left turn into the access road to Dam No. 1. From about a quarter of a mile away, the witness saw the brake lights and left-hand turn signal of this Chrysler, all in operation.

The other three automobiles kept on at the same rate of speed as they approached the standing car. None of their brake lights were shining. Stasik and Orlando, driving the Volkswagen and the Capri in the left lane, made a quick lane change and cut off a fourth car in front of Ziegler's Mazda which was moving in the right lane. As a result, the Mazda turned quickly to the left to pass around the left side of the car which applied brakes after it had been cut off by the Volkswagen and Capri. The Mazda crossed the median strip into the two eastbound lanes. Ziegler, driving the Mazda, recrossed the median strip into the westbound lanes but drove into the rear of the standing Chrysler waiting to make a left turn. The witness saw the Mazda apply its brakes an instant before the crash. Stasik and Orlando, driving the Volkswagen and Capri respectively, slowed down but then continued driving to the west. It is undisputed that the deceased, the passenger in the Mazda, came to his death as a result of the collision.

Jeffrey Stubitz testified for the State. He was sitting on his motorcycle on the right-hand portion of the road leading to Dam No. 1. At about 1:30 p.m., he was waiting to turn left in a westerly direction on Dundee. He moved his motorcycle about two feet northward into the eastbound lanes of Dundee. He observed the three cars, operated by the defendants, coming down the hill over the tollway. He pulled his motorcycle back. The three cars were "going pretty fast." The speed limit there was 50 miles per hour and the three cars were going faster than that. The three cars changed positions and were "butting in front of each other." The Volkswagen of Stasik was in the right lane of Dundee, together with the

Capri. They were slightly ahead of but alongside of the Mazda. The Mazda was straddling both of the westbound Dundee lanes. The Capri and Volkswagen were so close that their sides were almost touching. The witness also saw the Chrysler car, which he identified as a Plymouth, stopped in the left lane for a left turn into the access road to Dam No. 1. The witness then saw the Volkswagen (Stasik) and the Capri (Orlando) cut off the Mazda (Ziegler). The Mazda went around the Volkswagen and Capri and was going so fast that it struck the rear end of the Plymouth. The Mazda stopped and the Plymouth went forward. The witness then saw both the Volkswagen and the Capri cross the median strip into the eastbound lanes of traffic. At this time they were only 6 or 7 feet from the witness. At one point, before the Mazda and Plymouth collided, the witness heard a "big bang." The witness could not tell if the Volkswagen and the Capri collided. They were going so fast that they were "kind of, like,—sideways" on their axles. Both cars turned back into the westbound lanes and kept going.

Officer Michael Rompala, of the Wheeling police, was dispatched to the scene of the accident for investigation. He found the Mazda in an eastbound lane of Dundee Road. "The entire front of the vehicle was collapsed on approximately a 45-degree angle." The lower part of the body of the deceased was pinned in the Mazda. The Plymouth automobile was 285 feet west of the Mazda. The officer located the Capri about 200 feet west of where the accident occurred. The left front of the vehicle had new damage thereon.

The officer also testified that he received a call from an officer at the police station who had spoken to a person on the phone. This person stated that he had been involved in the accident. Officer Rompala then went to the parking lot of a restaurant about a half mile west of the accident. There he found the Volkswagen and the defendant Stasik. There was damage to the rear passenger side area of this car. Stasik told the police officer the car was damaged when he was hit from the rear while traveling west on Dundee Road. This testimony of the officer was corroborated by a series of photographs taken at the scene about 2 or 2:30 p.m. The officer also measured a skid mark of 193 feet back from the point where the Mazda (Ziegler) was stopped.

The defendant Ziegler testified that traffic was "very heavy" from Skokie Highway to Sanders Road. At one point he checked his speedometer. It showed "approximately 60 miles an hour." Stasik was traveling behind him. At the traffic light at Sanders Road, Ziegler stated he was in the left lane closest to the median behind Orlando. The Volkswagen (Stasik) pulled up to his right. When the light changed, the three cars proceeded. The Capri (Orlando) changed to the right lane and Ziegler proceeded in the left lane. Passing over the hill, Ziegler passed

Orlando in the Capri. Orlando moved in behind Ziegler in the left-hand lane. At the top of the hill, Ziegler saw the Volkswagen (Stasik) directly in front of him and the Capri (Orlando) directly behind him. Ziegler was driving 50 to 55 miles an hour and Stasik was constantly four lengths in front.

Ziegler testified that suddenly his passenger, Luben Antonoff, shouted a warning and grabbed at the steering wheel. Ziegler pushed Antonoff back with his right hand. Ziegler then noted the Volkswagen (Stasik) directly in front with its brake lights shining. Ziegler attempted to brake immediately. The Mazda swerved left to the median strip and around the left of the Volkswagen. As he tried to steer the Mazda off of the median strip and back to the westbound lanes, he struck the Plymouth which was prepared for a left turn.

Defendant Stasik testified that all of the persons involved worked for the same company. All were going to the apartment of Luben Antonoff (the deceased) in Palatine. Stasik observed heavy traffic from Skokie Highway to Sanders Road. The three cars were always grouped together. Stasik testified he made five lane changes between these points. After the stop for the traffic light at Sanders Road, Stasik drove his Volkswagen up the hill across the overpass. At that time, he was in the curb lane. He saw a posted speed limit sign of 50 miles per hour. He did not look at his speedometer. He saw a vehicle in front of him in that lane. He put on his directional signal, changed to the left, westbound lane and passed it.

He then saw an automobile with its left turn signal on about three-tenths of a mile away stopped and preparing to turn left into the entrance to Dam No. 1. He remained in the left lane but "started to slow my car down." He took his foot off of the accelerator, applied the brake, shifted down into first gear and reduced his speed to about 15 or 20 miles an hour. When he was 55 to 60 feet away from the standing Plymouth, he heard the sound of a car behind him going over the median strip. He saw this car with its brake lights on pass him on the left. The car attempted to steer into a different lane but it veered left and struck the standing Plymouth. Other testimony shows this car was the Mazda (driven by Ziegler). Stasik testified he saw it strike the Plymouth.

Five seconds later his Volkswagen was forcibly struck from the rear, the seat was broken, and his car veered into the east-bound lane of traffic and went past the Mazda. He was able to steer his car back to the curb lane westbound. On cross-examination he testified that, at the time of the crash between the Plymouth and the Mazda, he was traveling 15 to 20 miles per hour and was 50 to 60 feet away but he also testified that he was still 50 to 60 feet from the point of impact between these cars after 5 seconds had elapsed and his Volkswagen was struck from the rear.

Eric Baumeister, the passenger in the Volkswagen driven by Stasik and a friend of Stasik's "for several years", testified that he was not giving attention to the handling of the Volkswagen.

Thomas Orlando, driver of the Capri, testified that he made various lane changes in driving from Skokie Highway to Sanders Road but could not remember how many changes he made. He testified that at the stop light at Sanders Road his Capri was in the left lane with another car in front of it. The Mazda (Ziegler) was behind him, and the Volkswagen (Stasik) was next to him in the right-hand lane. When the light changed, Orlando proceeded over the elevation above the tollway and changed to the right-hand lane. He slowed down from about 50 to about 40 miles per hour. The Mazda (Ziegler) passed him in the left lane. Orlando put his signal on, changed lanes and drove about two car lengths behind the Mazda. He saw the brake lights on the Mazda which then drove on to the median. This brought the Volkswagen (Stasik) to his view. It was stopped about three car lengths ahead. He attempted to stop but collided with the Volkswagen. His recollection after this point was "very hazy."

Both defendants contend that the evidence failed to establish guilt by proof beyond a reasonable doubt. Although Ziegler was found guilty of reckless homicide and Stasik of reckless driving, the legal elements of both of these offenses are the same. The statute defines the gist of reckless driving as driving with "a willful or wanton disregard for safety of persons or property * * * " (Ill. Rev. Stat. 1977, ch. 95½, par. 11—503). Similarly, the statute defines reckless homicide as unintentionally killing an individual by recklessly driving a motor vehicle. Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a).

As regards both of these defendants, the evidence shows a course of reckless driving which amounts to willful and wanton conduct in the operation of their respective motor vehicles on Dundee Road from the intersection of Skokie Highway to the point of contact with the Plymouth automobile which resulted in the death of Luben Antonoff. Commencing shortly after Skokie Highway, there is evidence that the cars operated by these two defendants, and by their friend Thomas Orlando, were weaving in and out of traffic and on several occasions cutting off other automobiles. The evidence is to the effect that all three of these automobiles were operated at a faster speed than the flow of the admittedly heavy traffic on Dundee Road. This course of conduct continued on Dundee Road until the traffic light at Sanders Road. In fact, an eyewitness described the action of the defendants as "racing." Darryl Frank testified that during this time the defendants and Orlando were socializing and talking to each other. All of them were, in fact, friends driving to a common destination.

The evidence also shows that after leaving the Sanders Road traffic light the defendants accelerated their cars to an excessive and dangerous rate of speed. Although the speed limit was 50 miles an hour and traffic was admittedly heavy, there is evidence that all three of these automobiles were being driven at speeds up to 65 to 70 miles per hour. From the elevation above the Toll Road there was a clear view of the Plymouth which had stopped a quarter of a mile ahead to make a left turn. This car had its brake lights and left turn signal on. The defendants operated their cars without an attempt to slow down or take measures to avoid the stopped car until a fraction of a second prior to the collision.

There is evidence that the Capri (driven by Orlando) and the Volkswagen (driven by Stasik) suddenly cut off the Mazda (being driven by Ziegler) in the middle of the right-hand lane. The evidence of Darryl Frank is that the Capri and the Volkswagen cut off a car in front of the Mazda. The evidence of Jeffrey Stubitz differs from that of Frank in this regard. This was caused by the fact that Stubitz was standing still at a point south of the place of impact while Frank was in a moving vehicle riding along behind the three cars in question.

The evidence given by Frank is that the Mazda crossed the median strip and then came back into the left-hand westbound lane and drove into the rear of the standing Plymouth. The evidence of Stubitz is that the Capri and the Volkswagen did not stop but also went over across the median, came into contact with each other and then continued in a westerly direction.

In our opinion, regardless of which of these details is correct, this type of driving by these young men on a crowded public highway is sufficient to prove beyond reasonable doubt that both Ziegler and Stasik have been proved guilty "by a combination of circumstances which taken together demonstrate a conscious disregard of a substantial risk that is likely to cause death or great bodily harm to another." *People v. Shaffer* (1977), 49 Ill. App. 3d 207, 212, 364 N.E.2d 109, *appeal denied* (1978), 67 Ill. 2d 594.

■■ Defendants urge that excess speed alone does not constitute willful and wanton misconduct. As a theoretical matter that statement of the law is correct. (See *People v. Potter* (1955), 5 Ill. 2d 365, 371, 125 N.E.2d 510.) However, the evidence of the situation immediately preceding the fatal collision shows not only grossly excessive speed but the changing of lanes in a reckless and dangerous manner; cutting off of other cars; approaching a standing vehicle with brake lights and turn signal functioning without any attempt to reduce speed; failure to apply brakes despite more than ample warning and thus a total and reckless disregard of circumstances which demonstrates willful and wanton misconduct.

In the case of defendant Ziegler his guilt is accentuated by his own testimony. He stated, without corroboration, that his passenger, Luben Antonoff, suddenly attempted to seize the steering wheel. There would be no reason for that except the possibility that the manner in which Ziegler drove his vehicle was so dangerous that the passenger, almost as a reflex action, attempted to intervene to save the lives and limbs of both of them. The careful trial judge appeared to find difficulty in attempting to believe the testimony of Stasik. Stasik testified that he first saw the Plymouth standing some three-tenths of a mile away with its left turn signal functioning. He slowed down to about 30 miles per hour and was still 50 to 60 feet away from the Plymouth when the Mazda (driven by Ziegler) drove into the Plymouth. He testified that his Volkswagen came in contact with the Capri (driven by Orlando) 5 seconds after the first crash and that he was still at that point 50 to 60 feet away from the Volkswagen. As the State pointed out, this testimony presented an impossible factual situation.

In addition, the testimony of Jeffrey Stubitz is that immediately before the fatal accident he noted the three cars "butting in front of each other" as they came down the hill over the tollway. In addition, the photographs produced by the police show damage on the right rear side of the Volkswagen (driven by Stasik) and damage to the rear front of the Capri (driven by Orlando). Orlando told the police that this was new damage. In this regard, the trial court commented on the lack of credibility in the testimony of Stasik.

It clearly appears from the testimony of the defendants and the two eyewitnesses that guilt of the defendants has been proved beyond reasonable doubt. In addition, this conclusion is most strongly supported by the physical facts before us. We refer to the extensive damage to the Volkswagen automobile, the enormous force of the collision sufficient to cause death and pinning of the body of the deceased within the car; the damage to the Mazda and the Capri; corroboration of the damage to the automobiles by the photographs, the location of the Plymouth after the collision and the presence of a skid mark 193 feet long immediately back from the point at which the Mazda had stopped.

In our review of this type of situation, we are obliged to depend on "the sound presumption that the court in a bench trial relies only on proper evidence in reaching a determination on the merits [citations]." (*People v. Berland* (1978), 74 Ill. 2d 286, 310, 385 N.E.2d 649.) This principle serves to refute the point raised by defendant Ziegler that the trial judge used incompetent and improper evidence. In defendant Ziegler's brief he complains about the fact that the trial judge remarked about the testimony regarding the situation immediately prior to the

collision. We find no impropriety in these remarks by the trial court. In our opinion we think the evidence of the entire situation, commencing with the testimony of the eyewitness Darryl Frank when he first observed the conduct of the defendants, was all competent and proper to be considered by the trial judge. In fact both of the defendants introduced such evidence commencing with their conduct at the intersection of Dundee Road and Skokie Highway.

It is apparent from the lengthy record that the trial judge paid most careful attention to all of the testimony and stated a detailed opinion in support of his rulings. The trial judge has a better opportunity than this court to weigh the evidence and to determine the factual issues. (See *People v. Stankovich* (1970), 119 Ill. App. 2d 187, 194-95, 255 N.E.2d 461.) We have before us a situation in which it was the prerogative of the trial court from this vantage point to determine the weight and the credibility of the testimony. Credibility is uniquely a question for the trier of fact. In the instant case we cannot say that the entire record leaves us with any reasonable doubt of guilt. (See *People v. Lofton* (1977), 69 Ill. 2d 67, 72-73, 370 N.E.2d 517.) We therefore conclude that the convictions of the defendants Ziegler and Stasik are supported by evidence of guilt beyond a reasonable doubt.

On the charge of improper lane usage against Stasik, the statute prohibits a change of lane "until the driver has first ascertained that such movement can be made with safety." (Ill. Rev. Stat. 1977, ch. 95½, par. 11—709(a).) There is evidence that Stasik (driving the Volkswagen) changed lanes and cut off the Mazda automobile in the middle of the two westbound lanes. There is also evidence that Stasik drove the Volkswagen across the median against oncoming traffic and then returned to the right side of the road. There is also evidence by another eyewitness of a change of lane by the Capri and the Volkswagen automobiles so as to cut off another car being driven in front of the Mazda. As against this direct and positive evidence we have already considered the incredible nature of Stasik's own testimony. We conclude that the evidence against Stasik of improper lane usage is sufficient to show guilt beyond a reasonable doubt.

Defendant Ziegler contends that the evidence of excessive speed presented by the two eyewitnesses was improper. In this regard defendant Ziegler cites *People v. Holtz* (1974), 19 Ill. App. 3d 781, 313 N.E.2d 234, *appeal denied* (1974), 56 Ill. 2d 589. There, the issue was not the competency or propriety of an estimate of speed by a lay person. The problem there was that the person who estimated speed "was impeached by her testimony before the grand jury to the effect that she could not estimate the speed * * *." *Holtz*, 19 Ill. App. 3d 781, 788 n.2.

■■ ■ The courts of Illinois have consistently held that a layman may express an opinion regarding "the rate of speed of a moving object if he is

of ordinary intelligence and possessed an opportunity for observation." (*Jumer v. Henneberry* (1978), 61 Ill. App. 3d 422, 424, 377 N.E.2d 1328, citing *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 949, 364 N.E.2d 533.) In fact, it has been held that in Illinois "a witness may approximate the speed of vehicles as 'fast' or 'slow' or similar variations where the witness is unable to do so in specific miles per hour." (*Forney v. Calvin* (1975), 35 Ill. App. 3d 32, 39, 340 N.E.2d 603, and cases there cited. See also *People v. Singletary* (1979), 73 Ill. App. 3d 239, 248, 391 N.E.2d 440.) In addition, since defendants Ziegler and Stasik both testified as to their own estimates of their speed at various times, defendant Ziegler should not now complain regarding use of similar evidence by the State. (*Forest Preserve District v. South Holland Trust Bank* (1976), 38 Ill. App. 3d 873, 876, 349 N.E.2d 689.) We conclude that the evidence of speed was properly heard by the trial court.

Defendant Ziegler, guilty of reckless homicide, was sentenced to one year of nonreporting probation. Thomas J. Orlando, not a party to this appeal, was found guilty of reckless driving and received the same sentence. No point is raised by defendant Ziegler concerning the sentence. Defendant Stasik was found guilty of reckless driving and improper lane usage. He was sentenced to one year of nonreporting probation and to a fine of $1000 for reckless driving and a concurrent term of one year nonreporting probation for improper lane usage. In this court he urges that his sentence was grossly disparate in comparison to that imposed upon his codefendants. This is not an issue of severity of sentence as such. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153-54, 368 N.E.2d 882.) This contention raises an issue of basic fairness and even-handed justice. It goes to the problem, often vexatious in the administration of criminal justice, of attempting to reach the goal of avoiding unfair discrimination in sentencing.

Generally speaking, the courts have sought to justify disparate sentences on reasonable grounds such as the more culpable role of one defendant or a long criminal record as compared to a first offender. *People v. Bishop* (1978), 60 Ill. App. 3d 940, 945, 377 N.E.2d 585, citing *People v. Morris* (1969), 43 Ill. 2d 124, 131, 251 N.E.2d 202, and *People v. Slicker* (1969), 42 Ill. 2d 307, 308-09, 247 N.E.2d 407. See also *People v. Nester* (1976), 40 Ill. App. 3d 735, 741, 353 N.E.2d 23.

In the case before us we have a statement by the able trial judge at the conclusion of the case that all three of the defendants before him were "equally culpable." Neither Stasik nor Ziegler has a record of prior convictions. Actually Ziegler was found guilty of a Class 4 felony while Stasik was convicted of and punished for a Class B misdemeanor and a petty offense. These factors proscribe a more severe sentence for Stasik than for Ziegler.

It follows necessarily that this reviewing court should reduce the punishment of Stasik to do justice between the codefendants. (See *People v. Walker* (1976), 44 Ill. App. 3d 494, 499, 358 N.E.2d 672; *People v. Gnatz* (1972), 8 Ill. App. 3d 396, 400-01, 290 N.E.2d 392, and *People v. Hatfield* (1972), 5 Ill. App. 3d 996, 1005, 284 N.E.2d 708, *appeal denied* (1972), 52 Ill. 2d 598.) Accordingly we modify the sentence of defendant Stasik by vacating the fine assessed against him.

As thus modified, the judgments and sentences appealed from by defendants Charles F. Ziegler, Jr., and Jeffrey M. Stasik are affirmed.

Judgment against defendant Ziegler affirmed; judgments against defendant Stasik affirmed as modified.

McGLOON and CAMPBELL, JJ., concur.