THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD G. WOLFE, JR., Defendant-Appellant.

Second District No. 82—510

Opinion filed May 20, 1983.—Rehearing denied June 17, 1983.

James C. Hauser, of Magna, Brown & Hauser, of Round Lake, and Peter E. Pates, of Lake Villa, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

After a jury trial in the circuit court of Lake County, defendant, Donald G. Wolfe, Jr., was found guilty of two counts of reckless homicide (Ill. Rev. Stat. 1979, ch. 38, par. 9—3) for his involvement in an automobile accident in which two persons were killed. He appeals from his conviction on both counts and from the sentence, which consisted of the following: (1) $20,000 in fines; (2) periodic imprisonment consisting of weekends in the county jail for almost six months; (3) 30-month probation; (4) suspension of driving privileges during probation; and (5) 300 hours of public service. Because the trial court failed to give a jury instruction on a lesser included offense which defendant requested, we reverse and remand for a new trial.

The incident giving rise to this case was an auto accident on Kelsey Road near Barrington on May 22, 1981. The evidence at trial established that the vehicle that defendant was driving, a Dodge pickup truck, approached the car driven by Rose Gainer from behind as they both were traveling south on Kelsey Road shortly before 11 p.m. Kelsey Road in the vicinity of the accident is a two-lane black asphalt roadway with a double yellow line separating southbound and northbound lanes and a posted speed limit of 50 miles per hour. The Gainer car had four passengers in addition to the driver. The passengers in the Gainer car noticed defendant's truck because it was following very closely behind and the truck's headlights illuminated the inside of the car. Two of those passengers estimated Gainer's speed at 40 to 50 miles per hour, and one estimated defendant's as about the same. Defendant stated that Gainer's car proceeded slowly "like a farm vehicle." Defendant pulled into the left lane in order to pass Gainer. His truck never passed Gainer's car, although one passenger said the truck pulled up as far as the rear quarter panel of the car, and defendant said that he came almost even with the other car.

At this point, the headlights of an approaching vehicle became visible around a sharp curve in the road. The State's witnesses stated that Gainer accelerated upon seeing the approaching car, Gainer indicating that her purpose was to allow defendant to pull back in behind her. Defendant stated that upon seeing the third vehicle as he approached the curve, he could not get around Gainer's car. He "locked up" his brakes leaving skid marks on the pavement later measured to be 142 feet long. An expert witness for the State estimated defend-

ant's speed at the beginning of his skid to be 50 to 60 miles per hour. Defendant's truck collided head on with the northbound vehicle, a Fiat Strada driven by Robert Huntemann and in which Diane Martin was a passenger. Both colliding vehicles came to rest within the northbound lane.

It was stipulated that Huntemann and Martin both died as a result of injuries suffered due to collision. There were no skid marks behind the Fiat. A toxicology test showed that the alcohol in Huntemann's blood was 0.134, a level at which defendant's expert explained a person's ability to apply brakes in response to visual stimuli would be significantly impaired.

Defendant's father testified that, upon examining the truck the day after the accident, he noted that its manual transmission was in the second gear position. A private investigator employed by defendant testified that, by his measurements, a northbound driver could distinguish a vehicle in the southbound lane 303 feet 6 inches from the point of the collision and 440 feet 6 inches from the point defendant's skid marks began.

On appeal, defendant raises several issues regarding the indictment, the prosecution's evidence and conduct at trial, the sufficiency of the evidence, the jury instructions, and the sentence. Although, as shall be discussed, we find the trial court's denial of one of the jury instructions to warrant remandment; we shall address those of the other issues necessary to a proper disposition of this appeal.

I

Defendant first challenges the indictment. He was originally indicted by a grand jury for two counts of reckless homicide on November 16, 1981. On April 14, 1982, defendant was reindicted with only a small change in the wording of both counts to reflect that defendant's vehicle struck the *vehicle* of the victims, not the victims themselves. It was upon this second indictment that defendant was tried. Defendant seeks dismissal, contending that he was denied due process before the second grand jury. He characterizes that grand jury hearing as a "complete farce" and alleges instances of false evidence, absence of requested evidence, and prosecutorial misconduct.

Although the general rule is that a defendant may not challenge the validity of indictment returned by a legally constituted grand jury, courts have carved out certain exceptions to this rule over the years. (*People v. Rodgers* (1982), 92 Ill. 2d 283.) The exception which defendant seeks to invoke here is that a trial court has inherent authority to dismiss an indictment where there has been a clear denial of due proc-

ess. (*People v. Lawson* (1977), 67 Ill. 2d 449.) The supreme court in *Lawson*, however, emphasized that courts must proceed with restraint and ascertain preindictment denial of due process only with certainty. 67 Ill. 2d 449, 457.

The State's reliance upon *People v. Rodgers* (1982), 92 Ill. 2d 283, for the proposition that a defendant can challenge an indictment *only* where there is absolutely no evidence presented to the grand jury to support the charge is misplaced. Rather, *Rodgers* stands for the proposition that an indictment *may* be challenged on that basis even though a court will not consider the adequacy or sufficiency of the evidence. (See *People v. Creque* (1978), 72 Ill. 2d 515, *cert. denied* (1979), 441 U.S. 912, 60 L. Ed. 2d 384, 99 S. Ct. 2010.) *Rodgers* itself lists some of the other bases for dismissal of an indictment. *People v. Rodgers* (1982), 92 Ill. 2d 283, 287.

■ Defendant most strongly argues that false testimony before the grand jury concerning the State's expert's estimation of defendant's speed warranted dismissal. Joseph Rivera, an investigator for the State's Attorney's office and the only witness before the grand jury, testified that the State's expert, Thad Aycock, concluded that defendant's truck was going approximately 64 miles per hour. Aycock's actual conclusion, as evidenced in his report, was that the speed of defendant's truck was "no less than 51 mph and could have been as high as 64 mph." A court could properly dismiss an indictment based upon perjured testimony if the denial of due process was established with certainty. (*People v. Rivera* (1979), 72 Ill. App. 3d 1027, 390 N.E.2d 1259.) However, we hold that Rivera's reporting only of the estimated maximum as the approximate speed did not constitute with sufficient certainty denial of defendant's right to due process.

■ Defendant hints that the fact that Rivera's testimony was double hearsay aggravates matters. However, evidence of this sort is proper at a grand jury hearing. An indictment based solely on hearsay testimony is constitutionally acceptable. (*People v. Willie* (1979), 69 Ill. App. 3d 964, 388 N.E.2d 102.) Grand jurors may act on tips, rumors, evidence offered by the prosecutor, or their own personal knowledge; the validity of an indictment is not affected by the character of the evidence considered. *People v. Creque* (1978), 72 Ill. 2d 515.

■ Defendant alleges denial of due process in that the State did not present to the grand jury additional evidence, such as the speed limit at the scene of the accident, defendant's version of the occurrence, and the fact that the driver of the other vehicle was legally intoxicated and apparently took no evasive action. Defendant notes that

the grand jurors inquired about the first two of these. However, the prosecutor is under no duty to inform the grand jurors of the existence of additional or more direct evidence. (*People v. Creque* (1978), 72 Ill. 2d 515, 525.) The witness here, Joseph Rivera, informed the grand jury that he had no personal recollection of the speed limit and had not interviewed defendant. Under these circumstances, again we see no due process violation.

■ Finally, defendant maintains that a grand jury was "set up" by the prosecutor to "rubber stamp" the requested indictment. Defendant points to remarks of the prosecutor that they were only there to make "a formal change" from a previously returned indictment, that they would not be hearing testimony "in any great length," and that he, the prosecutor, did not "even know if it's necessary ***." Prosecutorial misconduct is a proper ground for dismissal of an indictment. (*People v. Linzy* (1979), 78 Ill. 2d 106.) However, despite the tone of the prosecutor's comments, there is no evidence that the grand jurors were misled about the nature of their responsibility. Again, no due process violation is established with certainty.

In sum, then, the factors cited by defendant neither separately nor cumulatively appear to have constituted a denial of due process such that the indictment should have been dismissed.

## II

■ Defendant next challenges the admissibility of the testimony of Thad Aycock, an expert witness called by the State, who concluded that defendant's vehicle was traveling between 50 and 60 miles per hour at the point when it began to skid. Defendant argues that Aycock's testimony was inadmissible for two reasons: (1) because it was not proper to supplement eyewitness testimony with reconstruction expert testimony where, as here, the factual matters to be resolved do not require a scientific knowledge beyond that of typical jurors; and (2) because Aycock was not sufficiently qualified as an expert on the speed of defendant's vehicle. We address this issue because of the likelihood of its reappearance on remand (see *Smith v. Metropolitan Sanitary District* (1978), 61 Ill. App. 3d 103, 377 N.E.2d 1088, *aff'd* (1979), 77 Ill. 2d 313) and because Aycock's testimony may have influenced the jury's determination of guilt in a case where we must dispose of a reasonable doubt issue despite a reversal based on another issue (see *People v. Taylor* (1979), 76 Ill. 2d 289).

There were five persons in the Gainer car, the vehicle which defendant was attempting to pass. Three of those five testified for the State at trial. Rose Gainer could not estimate either her speed or that

of defendant, but did state that she accelerated after spotting the headlights of the victims' car approaching in the opposite direction. Cynthia Arndt estimated that the Gainer car was going about 40 to 50 miles per hour at the time she turned around to see the truck. That was just prior to defendant's attempt to pass the Gainer car. Arndt also stated that Gainer accelerated after realizing that "something was going to happen." Arndt answered affirmatively when asked if defendant "was going between 40 and 50 miles per hour through that stretch, or less" prior to the time Gainer accelerated. Valerie Nitka observed the needle of Gainer's speedometer between 45 and 50 after first turning around to see defendant's truck behind them. After defendant pulled into the other lane, Nitka saw the approaching lights of the victims' car and felt Gainer accelerate. None of these witnesses reported seeing defendant begin to skid or crash into the oncoming car. However, Arndt and Nitka noted that it was a very brief period of time between Gainer's acceleration and the sound of the crash.

The rule concerning the propriety of expert testimony in reconstructing an accident is that reconstruction testimony may not be used as a substitute for eyewitness testimony where such is available; whether it may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on knowledge and application of principles of science beyond the ken of the average juror. (*Plank v. Holman* (1970), 46 Ill. 2d 465, 471; *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 359; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 703.2 (3d ed. 1979).) In cases where eyewitness testimony is available, the use of the expert is left to the discretion of the court within the guiding principle that the use of such testimony should be the exception and not the rule. (*People v. Dietschweiler* (1974), 21 Ill. App. 3d 707, 315 N.E.2d 585; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 703.2 (3d ed. 1979).) The speed of an automobile is generally considered a matter not beyond the ken of the average juror. *Peterson; Dietschweiler*.

■■ While we cannot agree with the State that there was a lack of reliability of the eyewitnesses in this case so as to permit an expert's estimation, we conclude that Aycock's testimony was admissible on a different ground. Arndt's and Nitka's testimony would establish defendant's speed at 40 to 50 miles per hour at a time when defendant was following closely behind and prior to the appearance of the headlights of the victims' vehicle. Gainer, Arndt and Nitka all testified that it was upon that appearance that Gainer accelerated. Seconds later, defendant began to skid and the crash occurred, unobserved by

the witnesses. Thus, there was no eyewitness testimony about defendant's speed at the instant he began to skid, the issue to which Aycock addressed himself. Although only a very short time had passed since the Arndt and Nitka observations, it is conceivable that defendant had reacted to Gainer's acceleration quickly by also accelerating. There is no inconsistency between the testimony of Arndt's and Nitka's estimation of a speed just below the speed limit prior to Gainer's acceleration and Aycock's estimation of a speed just above the speed limit seconds later after Gainer's acceleration. Therefore, Aycock's reconstruction testimony was admissible as relating to a factual issue not precisely addressed by the eyewitnesses' testimony.

Defendant's contention that Aycock lacked qualifications as an expert in auto accident reconstruction is totally meritless. Our examination of the record shows that Aycock has very strong credentials in auto accident reconstruction, including training, experience, teaching, professional association, and providing expert testimony. In the two sentences of Aycock's testimony which defendant takes out of context ("I have never been confronted with a situation where I was asked to reconstruct an accident. That would take far too much time and far too much money and it would be beyond by expertise anyway"), it is clear that Aycock was referring to literal or physical "reconstruction" of an accident scene, rather than to the diagram preparation, speed estimation and other calculations of the type Aycock was clearly qualified to do. This ambiguity was immediately cleared up during the State's direct examination.

## III

Defendant contends that the State did not meet its burden of proof. He maintains that in order to sustain his reckless homicide conviction, his conduct must be shown not only to be reckless, but also to be wilful and wanton.

For this proposition, defendant relies upon *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 72, 432 N.E.2d 672, 676, which held that in a reckless homicide prosecution, "[r]eckless conduct alone is not sufficient to sustain a conviction; the reckless conduct must be wilful and wanton." *LaCombe*, in turn, cited for this proposition only *People v. Ziegler* (1979), 78 Ill. App. 3d 490, 396 N.E.2d 1160. The *Ziegler* opinion contained the following paragraph:

> "Both defendants contend that the evidence failed to establish guilt by proof beyond a reasonable doubt. Although Ziegler was found guilty of reckless homicide and Stasik of reckless driving, the legal elements of both of these offenses are the

same. The statute defines the gist of reckless driving as driving with 'a willful and wanton disregard for safety of persons or property ***' (Ill. Rev. Stat. 1977, ch. 95½, par. 11—503). Similarly, the statute defines reckless homicide as unintentionally killing an individual by recklessly driving a motor vehicle. Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a)." (78 Ill. App. 3d 490, 495, 396 N.E.2d 1160, 1165.)

The *Ziegler* court then proceeded to affirm the convictions of both defendants on the basis that the evidence showed a course of reckless driving which amounted to wilful and wanton conduct.

Unlike the statute defining reckless driving (Ill. Rev. Stat. 1981, ch. 95½, par. 11—503), which the *Ziegler* opinion equated to reckless homicide, the statute defining reckless homicide (Ill. Rev. Stat. 1981, ch. 38, par. 9—3) does *not* say "willful and wanton," but does require that the accused's acts be performed "recklessly." The Criminal Code of 1961 defines recklessness as follows:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." Ill. Rev. Stat. 1981, ch. 38, par. 4—6.

Statutorily, then, "recklessly" includes "wantonly," but does not include "willfully" unless, as in the reckless *driving* provision, the statute provides otherwise. Numerous cases discuss the mental state element of the offense of reckless homicide or involuntary manslaughter under section 9—3 without reference to the phrase "willful and wanton." See, *e.g., In re Vitale* (1978), 71 Ill. 2d 229, 238, *vac. & rem. on different grounds* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260; *People v. Walljasper* (1981), 97 Ill. App. 3d 81, 82, 422 N.E.2d 251, 252; *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 1010, 423 N.E.2d 1185, 1190.

However, while we disagree with the conclusion in *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 72, 432 N.E.2d 672, 676, that wilful and wanton conduct in addition to recklessness must be shown, we conclude that the distinction is insignificant. This is because the terms "reckless" and "willful and wanton" have been used interchangeably. (*People v. Van Bussum* (1966), 72 Ill. App. 2d 428, 435-36, 219 N.E.2d 695, 699; see *Breslin v. Bates* (1973), 14 Ill. App. 3d 941, 948, 303

N.E.2d 807, 813; *Glaze v. Owens* (1968), 104 Ill. App. 2d 172, 176, 243 N.E.2d 13, 15.) The *Van Bussum* court refused to read the statutes cited here to require a specific finding of wilful and wanton conduct while noting the interchangeability of the terms. We read *People v. Ziegler* (1979), 78 Ill. App. 3d 490, 396 N.E.2d 1160, upon which the *LaCombe* court relied, to have merely employed that interchangeability in equating the elements of reckless conduct with those of reckless homicide.

■ Defendant further contends with regard to the State's burden of proof that the State failed to prove him guilty beyond a reasonable doubt. We first observe that it is undisputed that defendant's acts in driving a motor vehicle resulted in the deaths of two people. The evidence showed conclusively, and defendant does not deny, that he crossed over the double yellow line of Kelsey Road into the opposite lane in order to make an illegal pass, that at the time he pulled out a sharp curve in the road was approaching, that it was nighttime, that there were trees and bushes higher than the roadway obscuring the vision around the curve, and that defendant was very familiar with Kelsey Road and was fully aware of the double yellow line, the approaching curve, and the obscuring trees and bushes. The State's eyewitness testimony tended to show defendant was tailgating the Gainer car. Defendant's speed was estimated at 40 to 50 miles per hour by one of the State's eyewitnesses about the time he moved into the opposite lane. Although never pulling even with the Gainer car, which accelerated at the appearance of the victims' car, defendant's speed was estimated at 50 to 60 miles per hour by the State's reconstruction expert at the point defendant began to skid. Defendant stated that after seeing the victims' oncoming car he did not have sufficient time to get back in the right lane, but could only "lock-up" his brakes, resulting in a skid of 142 feet before the collision.

Based on these facts, we conclude that the evidence was sufficient to warrant a finding of guilty. By his actions, defendant consciously disregarded the substantial and unjustifiable risk that he would face another car traveling in the opposite direction in the same lane and that both cars would be traveling at approximately 50 miles per hour without sufficient time to avoid a head-on collision. Defendant certainly knew that his acts created the substantial and unjustifiable risk that such a collision could result in death.

Defendant correctly points out that improperly passing a motor vehicle, considered alone, does not constitute criminal recklessness. (*People v. Luttmer* (1977), 48 Ill. App. 3d 303, 362 N.E.2d 1093; *People v. Chambers* (1972), 8 Ill. App. 3d 430, 289 N.E.2d 476.) We have

here, however, some facts beyond mere improper passing. Defendant undertook to pass the Gainer car at night with an approaching curve and obscuring foliage, all factors of which he was subjectively aware, and at a speed which was excessive, if not for proper lane usage, then for attempting a blind pass where reaction time was crucial.

Defendant also attempts to establish reasonable doubt as to his recklessness through the actions of the drivers of the other two vehicles. Defendant cites *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 73, 432 N.E.2d 672, 676, for the proposition that criminal liability should not attach to a defendant's otherwise condemnable conduct if a victim's reckless conduct could not have been anticipated by the defendant.

Here, defendant points to, as unanticipated reckless conduct of others, the acceleration of Rose Gainer and the intoxicated state of Robert Huntemann and Huntemann's apparent failure to take evasive action. However, Gainer did not accelerate, according to the State's eyewitnesses, until the victim's car became visible. As defendant had not yet pulled ahead or even with her, Gainer's attempt to let defendant back in the right lane behind her was neither reckless nor unanticipatable. There is no evidence that Huntemann, although intoxicated, was driving anywhere he should not have been or in any improper manner. Even if his state of insobriety prevented him from taking evasive action, Huntemann's conduct could not be considered reckless. (See *People v. Walljasper* (1981), 97 Ill. App. 3d 81, 422 N.E.2d 251, wherein alleged intoxication did not constitute recklessness where the fatal accident was the result of an unforeseen slippery patch on the roadway.) Defendant could not rely on a driver of a vehicle approaching him head on around a blind curve to be able to react quickly enough to evade him. The actions of Gainer and Huntemann do not approach that of the victim-passenger in *LaCombe*, who, without warning to the defendant-driver, fell and was run over while attempting to climb out the window and onto the outside of the defendant's slow- but erratic -moving truck.

IV

■ Defendant assigns error in the trial court's denial of five of his tendered instructions. None of the five was an instruction contained in the Illinois Pattern Jury Instructions (IPI), Criminal (2d ed. 1981). Generally, an IPI Criminal instruction should be used whenever it contains an applicable instruction; a non-IPI instruction may be used only if IPI Criminal does not contain an accurate instruction on a subject that the jury should be instructed upon and if the tendered

non-IPI instruction is simple, brief, impartial, and free from argument. (87 Ill. 2d R. 451(a); *People v. Haywood* (1980), 82 Ill. 2d 540.) The decision whether to give a non-IPI instruction is within the discretion of the trial court. (*People v. Moore* (1980), 89 Ill. App. 3d 202, 411 N.E.2d 579; *People v. Larson* (1980), 82 Ill. App. 3d 129, 402 N.E.2d 732.) That discretion is abused if the court's refusal to give an instruction results in the jury not being instructed as to a defense theory of the case which is supported by some evidence. *People v. Hines* (1975), 28 Ill. App. 3d 976, 329 N.E.2d 903.

Defendant's instruction No. 1 states that a guilty verdict can be sustained only where the proof discloses that defendant knew the danger of collision and recklessly collided with the vehicle driven by the deceased without using such means as were reasonable and at his command to prevent the accident. Although this is an accurate statement of the law (*People v. Crego* (1946), 395 Ill. 451), it amounts to a restatement of the mental state element of the offense of reckless homicide which was given briefly, impartially, and sufficiently in IPI Criminal No. 5.01 as People's instruction No. 9.

Defendant's instruction No. 2 modified IPI Criminal No. 7.10, which was given as the People's Nos. 11 and 12, to include the following additional proposition for the State to prove: "That reckless conduct alone is not sufficient to sustain the charge of reckless homicide; the reckless conduct must be wilful and wanton." Defendant here again relies upon *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 432 N.E.2d 672, of which we have already expressed disapproval. *People v. Van Bussum* (1966), 72 Ill. App. 2d 428, 219 N.E.2d 695, held that it is not necessary to instruct the jury that it must find defendant's conduct wilful and wanton in order to convict because sections 9—3 and 4—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1961, ch. 38, pars. 9—3, 4—6) do not require it and because "wilful and wanton" has been used interchangeably with "reckless." Thus, IPI Criminal No. 7.10 was a sufficient statement of the elements of the offense. Moreover, defendant's No. 2 is inartfully composed in that it does not inform the jury of its statement of law but rather requires the State to prove that statement.

Defendant's instruction No. 3 states that improperly passing a motor vehicle, considered alone, does not constitute criminal recklessness. Again, although this is a true statement (*People v. Chambers* (1972), 8 Ill. App. 3d 430, 289 N.E.2d 476), IPI Criminal No. 5.01 uses the statutory language to briefly, impartially, and sufficiently define reckless conduct.

Defendant's instruction No. 5 recites the provisions of section

11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501) to the effect that it is illegal to drive while intoxicated and that there is a presumption of intoxication if analysis of a person's bodily substance shows an alcoholic content of 0.10% or more. Defendant requested this instruction because of the intoxication of victim Huntemann. There was no evidence of defendant's intoxication. As we have noted, Huntemann's intoxication alone could not have established his recklessness. (See *People v. Walljasper* (1981), 97 Ill. App. 3d 81, 422 N.E.2d 251.) Under such circumstances, defendant's non-IPI instruction could have served to confuse the jury and was therefore properly denied. See *People v. Redmond* (1979), 73 Ill. App. 3d 160, 177, 390 N.E.2d 1364, 1376.

 Unlike the denial of defendant's other instructions, the trial court's denial of defendant's instruction No. 6 compels our reversal and remandment of this case. This non-IPI instruction accurately reflects the elements necessary to prove the petty traffic offense of passing in a no-passing zone pursuant to section 11—707 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—707). Defendant contends that, under the circumstances of this case, that offense was a lesser included one of reckless homicide and that he was therefore entitled to the instruction.

Defendant's entitlement to a lesser included offense instruction is dependent upon a showing that (1) the lesser included offense is included in the offense charged, and (2) that the charged greater offense requires the jury to decide a disputed factual element which is not required for conviction of the lesser included offense. (*People v. Cramer* (1981), 85 Ill. 2d 92; *People v. Wys* (1982), 103 Ill. App. 3d 273, 431 N.E.2d 38.) Section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 2—9) defined an included offense as one which "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged ***." However, the courts have found that this definition lends little to the proper focus in determining a lesser included offense. (*People v. Wys* (1982), 103 Ill. App. 3d 273, 275, 431 N.E.2d 38, 40; see *People v. Mays* (1982), 91 Ill. 2d 251, 255.) Rather, the cases note three different approaches to test an offense as a lesser included offense: (1) the abstract statutory definition of the greater offense; (2) the greater crime as it is alleged in the indictment or other charging instrument; and (3) the greater crime as its necessary elements are proved at trial. (*People v. Mays* (1982), 91 Ill. 2d 251, 255; *People v. Wys* (1982), 103 Ill. App. 3d 273, 275-77, 431 N.E.2d 38, 40-41.) The first test has

been discounted, the second endorsed, and judgment reserved on the third. *Cramer; Mays; Wys.*

Application of the second test requires a court to examine the indictment: in a case where some elements of the crime *charged* comprise a lesser included crime, the defendant, if the jury could rationally acquit him on a greater offense and convict on the lesser, is entitled to an instruction on the lesser offense. (*People v. Wys* (1982), 103 Ill. App. 3d 273, 276, 431 N.E.2d 38, 41.) In *People v. Cashen* (1983), 112 Ill. App. 3d 1054, 446 N.E.2d 288, the appellate court, sitting in the Fourth District, recently applied this second test under facts similar to this case. There, the court fund that disobeying a traffic control device (Ill. Rev. Stat. 1981, ch. 95½, par. 11—305) was a lesser included offense of reckless homicide in that case, based upon the allegations of the indictment.

In the present case, both counts of the indictment alleged in part that defendant "was driving his vehicle completely in the on coming traffic lane to the left of the double yellow center line ***." Section 11—707(b) of the Illinois Vehicle Code provides as follows:

> "Where signs or markings are in place to define a no-passing zone as set forth in paragraph (a) no driver may at any time drive on the left side of the roadway within the no-passing zone or on the left side of any pavement striping designed to mark such no-passing zone throughout its length." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—707(b).)

Thus, the indictment charges the defendant with conduct that constitutes all elements of the offense defined in section 11—707(b).

Moreover, as is also necessary before an included offense instruction must be given, the offense charged involves a disputed factual element which is not part of the lesser offense: that defendant's conduct was criminally reckless. (See *People v. Cashen* (1983), 112 Ill. App. 3d 1054, 1056, 446 N.E.2d 288, 289.) We reverse and remand on this issue.

In light of our decision to remand, we need not address defendant's other assignments of error. (*Smith v. Metropolitan Sanitary District* (1978), 61 Ill. App. 3d 103, 377 N.E.2d 1088, *aff'd* (1979), 77 Ill. 2d 313.) We reverse the judgment of the circuit court of Lake County and remand for a new trial consistent with this opinion.

Reversed and remanded.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.