**Sylvester BROWN, Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 82 C 21.**

United States District Court,
N.D. Illinois, E.D.

Oct. 19, 1983.

1376

Jerome Feldman, Judith Halprin, Chicago, Ill., for plaintiff.

Thomas E. Brabec, Robert W. Fioretti, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This civil rights suit is before the court on defendants' motion to dismiss plaintiff's Amended Complaint. For the reasons stated below, the court grants defendants' motion in part and denies it in part.

The allegations of the Amended Complaint, which are taken as true for the purposes of this motion to dismiss, reveal the following facts among others. On or about January 1, 1980, plaintiff Sylvester Brown was at a CTA station. Defendants Peter Bukiri and J. Delanty, Chicago police officers, approached Brown. Fearing for his safety, Brown ran from the station. (Count I ¶ 3.) Bukiri and Delanty pursued Brown, caught him and arrested him. Bukiri and Delanty beat Brown, handcuffed his hands behind his back, and put him in the back of a paddy wagon. (Count I ¶ 4.) With his hands handcuffed behind his back, Brown could not maintain his balance as Bukiri and Delanty drove the paddy wagon, making stops and turns. (Count I ¶¶ 5, 6.) Bukiri and Delanty drove to a Chicago police station. Brown informed them that he was injured and could not move. (Count II ¶ 2.) Bukiri and Delanty pulled him by the legs from the paddy wagon, and Brown lost consciousness. (Count II ¶ 3.) As a result of his injuries, Brown now is a quadriplegic. (Count II ¶ 5.) Brown is confined to a wheelchair for life. (Count IV ¶ 8.) After the incident, Bukiri and Delanty conspired to file false charges of disorderly conduct against Brown, to help justify his arrest. (Count III ¶ 2.)

In Count I, Brown sues Bukiri, Delanty and the City of Chicago under 42 U.S.C. §§ 1981 and 1983, for violation of his civil rights occurring during his arrest and transportation in the paddy wagon. In Count II, Brown sues Bukiri, Delanty and the City under the same statutes for violation of his civil rights at the time he announced his injury and was removed from the paddy wagon. In Count III, Brown sues Bukiri, Delanty and the City under 42 U.S.C. §§ 1983 and 1985(3) for violation of his civil rights by the conspiracy to charge him with disorderly conduct. In Count IV, Brown sues Bukiri, Delanty and the City for negligence in his arrest and transportation in the paddy wagon.

## COUNT I

The court grants defendants' motion to dismiss Count I only in part. First, the court grants defendants' motion insofar as Count I purports to proceed under 42 U.S.C. § 1981, since Brown alleges no discrimination based on race or on any classification even remotely analogous to race. *See, e.g., Carillo v. Illinois Bell Telephone Co.*, 538 F.Supp. 793, 795–97 (N.D.Ill.1982) (Getzendanner, J.). Second, the court also grants defendants' motion to the extent Brown may be proceeding against the City on a theory of respondeat superior. Municipalities may not be held liable under § 1983 on the basis of respondeat superior. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Recognizing this general rule, Brown argues that the City's policy of indemnifying police officers against civil rights judgments amounts to some kind of ratification, making respondeat superior liability appropriate. The court rejects this approach. Rather than making the doctrine of respondeat superior applica-

**1378**

ble, the alleged indemnification policy is an action of the City, to be considered in the court's *Monell* analysis, which is given below.

■ In other respects, the court holds that Count I states a claim sufficient to withstand dismissal on the pleadings. As to Bukiri and Delanty, Count I clearly alleges that they acted recklessly or intentionally in placing Brown in a vulnerable position inside the paddy wagon and then driving the wagon in a manner that would cause him to fall and be thrown about the back of the wagon. Further, the court holds that Count I states a claim against the City under the principles of *Monell.*

■ In *Monell* the Supreme Court held that municipalities may be held liable under § 1983, but only for their own acts. A municipality thus may not be held liable under the doctrine of respondeat superior, which makes an employer liable vicariously for all acts committed by its employees while acting "within the scope of their employment." *Iskander v. Village of Park Forest,* 690 F.2d 126, 130 (7th Cir.1982). Municipalities, like other corporations do, however, act through their agents. While a municipality is not chargeable vicariously with everything its employees do while acting within the scope of their employment, it may be held directly liable for those acts which its agents actually perform on its behalf, in the fulfillment of their duties. As stated in *Monell,* "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. at 2037.

■ A municipality may be held liable not only on the basis of officially promulgated policies, but also on the basis of de facto municipal policies, including those consisting of improper inaction in the face of repeated constitutional violations. *Lenard v. Argento,* 699 F.2d 874, 886 (7th Cir.1983), *petition for cert. filed,* —— U.S.

——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983). Several district court opinions have devoted much attention to the proper manner for pleading such de facto policies, some requiring allegations of more than one incident, and others eschewing any such requirement if the existence of the policy is alleged. *Compare, e.g., Hamrick v. Lewis,* 515 F.Supp. 983, 985–86 (N.D.Ill. 1981) (Aspen, J.), *with Means v. City of Chicago,* 535 F.Supp. 455, 458–61 (N.D.Ill. 1982) (Marshall, J.). In the present case, however, it appears that Brown's most important allegations against the City relate to official acts or policies, rather than to de facto policies—i.e., Brown alleges actions taken in execution of City policies, and also acts "by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694, 98 S.Ct. at 2034.

One of Brown's allegations is that the City purchases and uses "paddy wagons which are inherently unsafe." (Count I ¶ 10.) This allegation must be considered as an allegation of an official action by the City. The City presumably conferred authority upon one or more of its agents to select a model of paddy wagon for purchase and use, and there is no contention that anyone exceeded the delegated authority or defied City policy in purchasing paddy wagons for use by the police department. In this respect Brown clearly alleges action by the City itself.

Another of Brown's allegations is that "the Defendant City of Chicago and its police department had in force and effect, as a matter of policy, the instruction of its police officers to handcuff citizens under arrest in such fashion that their arms were secured behind their backs." (Count I ¶ 9.) This paragraph too appears to allege official action by the City. The City and the police department presumably confer authority upon one or more agents to determine how police officers should be instructed to use handcuffs on arrestees. The decision to instruct police officers to handcuff arrestees' wrists behind their backs, the carrying out of that decision by instruction of police officers, and the further execution of that decision by a police officer's

handcuffing an arrestee in the manner in which he is instructed, are acts of the City, acting through its agents. Even if no formal decision ever was made, widespread instruction in this method by those charged with instructing police officers, very likely would amount to an official or perhaps de facto City policy on which City liability could be based.

It should be noted that the official City acts or policies need not appear unconstitutional on their face, but at the same time it is not enough merely to identify acts or policies of the City. "Under *Monell*, the policy of the municipality is not to be examined, in a vacuum, for unconstitutionality. Rather, under *Monell*, the crucial question is whether the unconstitutional acts complained of were *caused by* a policy or custom of the municipality." *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir.1981) (emphasis in original). Thus, the court has rejected a claim against the City based on an alleged policy of indemnifying police officers against civil rights judgments. Such a policy surely would be an official City policy, but the court held that the policy could not have caused the acts complained of. *Ekergren v. City of Chicago*, 538 F.Supp. 770, 772–73 (N.D.Ill.1982) (Getzendanner, J.).

Brown's allegations must support the inference that the City's alleged acts caused his injury, and the court believes that Brown's allegations do support such an inference. Brown alleges:

That as a result of the policies of purchase and use of paddy wagons which are inherently unsafe and the handcuffing of arrested citizens behind their back during transportation in said wagons, the defendant CITY OF CHICAGO and its police department deliberately endanger all those persons who are transported in such fashion.

(Count I ¶ 10.) Brown also alleges, however, what might be an intervening cause: that Bukiri and Delanty "drove in a deliberately and wilfully careless manner." (Count I ¶ 6.) So, the extent of the causal

relation between the City's acts and Brown's injuries might be an issue at trial.

Brown alleges that the City "deliberately" endangers arrestees. (Count I ¶ 10.) Whether the City could be held liable for negligence in selecting paddy wagons and handcuffing procedures, or whether reckless or intentional action must be shown, appears to be an open question. *See Means v. City of Chicago*, 535 F.Supp. at 461–462, *criticizing Spriggs v. City of Chicago*, 523 F.Supp. 138, 142 (N.D.Ill.1981). The parties have not addressed this question, and the court will not reach out to decide it. In any event, Brown's complaint is sufficient on this point, since it alleges that the City acted "deliberately." Intent may be alleged generally. Rule 9(b), Fed. R.Civ.P.

Under any standard of liability, it may be relevant at trial whether other incidents of this nature have occurred. This question is similar to that noted above, in which the existence of several occurrences is considered important in establishing the existence of a de facto policy. In that context, other occurrences would provide evidence of a de facto policy. In this case, the existence of other occurrences may go to the question of whether the City's acts were intentional. Continued use of the challenged paddy wagons and handcuffing method in the face of a number of injuries might support a finding of intentional action, while an isolated injury, unaccompanied by some other type of proof, might be insufficient to prove intent. The manner in which Bukiri and Delanty drove also may be relevant. For instance, purchase and use of paddy wagons which cause serious injuries even during normal use might support a finding of intentional action, while use of wagons which cause injuries only during misuse may raise more difficult questions, such as questions of whether such misuse was or should have been foreseen. These same questions would arise under a standard of recklessness or negligence.

The court recognizes that Count I also alleges that Bukiri and Delanty arrested

Brown without probable cause, beat him before placing him in the paddy wagon, and then drove intentionally in a way likely to injure him, such as by making a sharp left turn. The City policies that Brown successfully has alleged do not appear to be related to these alleged violations of Brown's civil rights. It would be premature for the court to attempt to delineate all the circumstances under which the City might be found liable; it is sufficient at this point to hold that Count I does state a claim against the City based on injuries allegedly caused by the paddy wagon and by handcuffing, but not based on the arrest, the alleged beating, or the manner in which Bukiri and Delanty drove the paddy wagon.

In the foregoing discussion, the court has not considered this statement, which follows the ad damnum clause of Brown's Count IV:

> With respect to all of the allegations hereinabove contained in Counts I, II, III, and IV Plaintiff states that the CITY OF CHICAGO, its police superintendent and director of police professional standards by their written and de facto policies, regulations and practices and customs of hiring, screening and training police officers; by failing to discipline officers for demonstrated misconduct, by encouraging or sanctioning the use of deadly and excessive force, and by its purchase and use of paddywagons as hereinabove described are liable to plaintiff for those injuries directly and proximately resulting from the implementation of such policies, regulations, practices and customs.

This statement, appearing in an unnumbered paragraph at the very end of the Amended Complaint, is not a proper allegation, and the court does not consider it as such. Among its curious features is that it asserts the liability of the "police superintendent" and the "director of police professional standards," who are not named as defendants in this lawsuit. The court considers this paragraph merely as a statement intended to signal that Brown asserts that the City is liable by virtue of policies

set out in the allegations of the Amended Complaint.

Finally, the court does not read Brown's invocation of various constitutional provisions as an attempt to sue directly under the Constitution. Brown merely is giving defendants and the court some indication of which constitutional rights form the basis for his civil rights claims.

COUNT II

■ The court grants defendants' motion to dismiss Count II in part. As stated above, Brown has not alleged the elements of a cause of action under 42 U.S.C. § 1981. Brown does state a claim under § 1983 against Bukiri and Delanty, but not against the City. Count II is based on Brown's treatment when the paddy wagon arrived at the police station. Brown alleges that he informed Bukiri and Delanty of his injuries, but that they pulled him violently from the paddy wagon, injuring him further and causing him to lose consciousness. Brown alleges that he was taken to a hospital sometime after he lost consciousness. Count II incorporates by reference paragraphs one through eight of Count I, and also includes five paragraphs of additional allegations. None of these paragraphs alleges any City action or policy, as required under *Monell*. The City therefore must be dismissed as a defendant from Count II.

COUNT III

■ The court grants defendants' motion to dismiss Count III insofar as Count III purports to proceed under 42 U.S.C. § 1985(3). Brown alleges that the conspiracy to charge him with disorderly conduct "was undertaken against Plaintiff as one of a class of citizens against whom police officers have committed acts of misconduct." (Count III ¶ 3.) While there may be some basis for distinguishing Brown's allegations from those in *Ekergren*, which defendants quote in their reply memorandum, the court still holds that Brown does not allege the sort of class-based discrimination or animus required under *Griffin v.*

*Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

■ The court holds that Count III does state a claim against all three named defendants under 42 U.S.C. § 1983. As to the City, Brown alleges that the filing of false charges, as a cover-up for police misconduct, is routine and is approved at high levels of the police department. This allegation presumably refers to an unwritten policy, and the most likely way for Brown to prove it up would be by evidence of other similar occurrences. While Brown does not describe other particular occurrences involving such cover-ups, he does allege generally the existence of other occurrences, by alleging that they are routine. Even when courts have required plaintiffs to allege other incidents, they have required only that they allege the existence of those incidents, not that they describe them in detail. *Rivera v. Farrell,* 538 F.Supp. 291, 294 & n. 8 (N.D.Ill.1982) (Aspen, J.). The court holds that Brown adequately alleges a de facto policy. Of course, the court holds only that Count III can withstand dismissal under Rule 12(b)(6). Brown's ultimate success in Count III will depend on the evidence he can muster to support his allegations. Also important will be Brown's ability to show that the alleged conspiracy deprived him of his rights and injured him. *See Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980).

## COUNT IV

The court denies defendants' motion to dismiss Count IV, on the understanding that it is brought as a pendent state law negligence claim. Brown has caused some confusion on this point. Count IV seeks recovery of attorney fees under 42 U.S.C. § 1988, which authorizes such recovery in federal civil rights actions, and Brown states in his memorandum on this motion:

> Plaintiff has not filed his federal claim under the laws of the State of Illinois. His claims arise under the U.S. Constitution and the Civil Rights Act. Plaintiff

has sought no relief under the forum's law as argued by defendants.

(Plaintiff's memo, p. 3.) On the other hand, Count IV seems to be drafted as a negligence count, and it does not purport to be brought under any particular federal statute, as do the other counts. The court will treat Count IV as a state law negligence count, because it appears to be intended as a state law count.

■ The court rejects defendants' challenge to Count IV based on the statute of limitations. Brown's cause of action is based on incidents occurring on January 1, 1980. That date, being the date from which the limitation period runs, is not included in the period. The last day of the limitation period would have been January 1, 1982, but that date was a legal holiday. The period therefore ran through the next two days, Saturday, January 2 and Sunday, January 3, to Monday, January 4, the date on which Brown filed his suit. This computation is correct under both Rule 6(b), Fed. R.Civ.P., and Ill.Stat.Rev. ch. 1, ¶ 1102, so the court need not decide whether state or federal law governs the computation of the limitation period. It should be noted also, with respect to Brown's federal counts, that a five-year statute of limitations governs federal civil rights actions in Illinois. *Beard v. Robinson,* 563 F.2d 331, 336 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978).

## CONCLUSION

Accordingly, defendants' motion to dismiss the Amended Complaint is granted in part and denied in part. The City is dismissed as a defendant in Count II.

It is so ordered.