**David C. MONTGOMERY, Plaintiff,**

**v.**

**CITY OF CHICAGO, a municipal corporation, R. Defelice, P. Kavarital, John Doe, United Parcel Service, Inc., Willie Roberts, and Penn Trailers and Truck Bodies Corporation, Defendants.**

No. 86 C 3872.

United States District Court,
N.D. Illinois, E.D.

Sept. 14, 1987.

James N. Vail, Chicago, Ill., Robert J. Frejlich, Westchester, Ill., for plaintiff.

Paul M. Sheridan, Judson H. Miner, Corp. Counsel for the City of Chicago.

Robert E. Arroyo, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, Ill., for United Parcel Service, Inc. and Willie Roberts.

Richard S. Zenz, Cairns and Levin, Chicago, Ill., for Penn Trailers and Truck Bodies.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff filed an amended complaint in October 1986, raising claims under 42 U.S. C. § 1983 and various Illinois common law torts in connection with his arrest in August 1985 by the Chicago Police Department. His federal action is against the City and three named police officers for alleged injuries suffered while being transported in the compartment of a police van and for their alleged failure to provide medical assistance upon arriving at the lockup. Plaintiff pursues a pendent state law tort claim against Penn Trailers and Truck Bodies Corporation (Penn Trailers), the manufacturer of the police van. Further, plaintiff seeks claims against defendants United Parcel Service (UPS) and Willie Roberts under a pendent Illinois common law theory of false imprisonment. All defendants have moved for dismissal. We deny those motions as to the City, its police officers and Penn Trailers. We agree with defendants UPS and Roberts that on the facts we should not exercise subject matter jurisdiction over plaintiff's false imprisonment claim, and it is dismissed.

## FACTS

Plaintiff alleges that defendant UPS, by its employee Roberts, caused his arrest by

falsely accusing him of stealing a package. He further alleges that he was handcuffed behind his back and transported to a police station by defendant police officers in a van manufactured and sold to the City by defendant Penn Trailers. Because the van's compartment consisted of only two metal benches, with no means of support for prisoners who have been handcuffed behind their backs, plaintiff allegedly fell and received injuries to his head, neck, face, chest and other portions of his body. Further, plaintiff alleges that he was denied medical assistance when he arrived at the lockup, thus further aggravating his injuries.

## DISCUSSION

### Motion to Dismiss § 1983 Claim

■ The City moves to dismiss for failure to state a claim under federal law. Plaintiff alleges that the police officers and the City knew or should have known that transportation through traffic while handcuffed in a van with nothing but bare metal benches, will frequently cause injury to detainees. Despite this knowledge, defendant police officers, according to City policy, placed plaintiff in the rear of the van. Relying upon *White v. Rochford*, 592 F.2d 381 (7th Cir.1979), plaintiff claims that the due process clause protects persons against unjustified intrusions upon their physical and emotional well-being, including the right to bodily integrity. Plaintiff cites three previous § 1983 actions, all naming the City of Chicago and various police officers as defendants, alleging injury from transportation in the City's police vans. *See Franklin v. City of Chicago*, 102 F.R.D. 944 (N.D.Ill.1984) (certifying class); *Brown v. City of Chicago*, 573 F.Supp. 1375 (N.D.Ill. 1983); *Magayanes v. Terrance*, No. 80 C 1299 (N.D.Ill. August 12, 1981) (later proceedings in 542 F.Supp. 28 (1982) and 739 F.2d 1131 (7th Cir.1983)). While municipal-

ities are liable under § 1983 only for their own actions and not under a theory of *respondeat superior, see Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), plaintiff alleges—and the cases cited above recognize—that it is the policy and practice of the City to use such vans. While plaintiff does not specifically allege that defendants acted with reckless disregard for his constitutional rights, the factual allegations raise reasonable inferences sufficient to deny the City and police officers' motion to dismiss.

### Pendent Party Jurisdiction

Defendants Roberts, UPS and Penn Trailers move to dismiss plaintiff's state law claims against them for lack of subject matter jurisdiction. While conceding that the court has jurisdiction over the § 1983 claim against the City and its police officers, these defendants maintain that pendent jurisdiction is improper where it is exercised to join additional parties who would not be liable under the federal claim. The question of pendent party jurisdiction was left unresolved by the Supreme Court in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) ("For the purpose of addressing this jurisdictional question ... we think it quite unnecessary to formulate any general, all-encompassing jurisdictional rule"), *overruled in part, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[1] The circuits are split as to the existence of pendent party jurisdiction,[2] with a fairly clear rule in the Seventh Circuit that it may be proper in federal question cases. *See Price v. Pierce*, 823 F.2d 1114 (7th Cir.1987) (stating that this circuit "recognize[s] 'pendent party' jurisdiction where the main claim is a federal-question rather than diversity claim"); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1359–60, 1361 (7th Cir.1985) (Judges Posner and Gibson holding that pendent

1. *See infra* n. 6.

2. For a partial list of citations in support of pendent party jurisdiction, *see Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1360 (7th Cir.1985). Only the Ninth Circuit holds steadfast to the opinion that pendent party jurisdic-

tion is improper. For a recent restatement of its refusal to recognize pendent party jurisdiction, *see Carpenters Southern California Administrative Corp. v. D & L Camp Construction Co.*, 738 F.2d 999, 1000 (9th Cir.1984).

party jurisdiction is proper); and *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187 (7th Cir.1984). *But see U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1055 (7th Cir.1979) (no abuse of discretion for district court to dismiss pendent party claim, *citing Aldinger*); *Hampton v. City of Chicago*, 484 F.2d 602, 611 (7th Cir.1973) (claim based upon diversity could not sustain pendent party jurisdiction); and *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F.Supp. 595, 604–05 (N.D.Ill. 1982) (holding that even where primary claim is a federal question, pendent party jurisdiction is not a recognized basis of jurisdiction in the Seventh Circuit).

▮ The question of pendent party jurisdiction needs to be resolved under a two-part test. First, the court must determine whether there is jurisdictional *power* to join the additional party and hear the state claim. Second, if such power exists the district court must determine whether it should exercise its discretion to permit plaintiff to litigate all of the claims in federal court.

**Judicial Power**

As the Supreme Court has stated, whether state law claims are within the federal judicial power presents a "subtle and complex question with far-reaching implications," *Moor v. County of Alameda*, 411 U.S. 693, 715, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), and often involves "careful attention to the relevant statutory language" which gives rise to the federal question, *Aldinger v. Howard*, 427 U.S. at 17, 96 S.Ct. at 2421. Federal courts view pendent party jurisdiction as even more complicated

than pendent claim jurisdiction since the court is asked to join parties who cannot be joined in the federal claim. *See id.*, 427 U.S. at 15, 96 S.Ct. at 2420; *Bernstein v. Lind-Waldock & Co.*, 738 F.2d at 187 (7th Cir.1984).

"Federal question" judicial power is limited by Article III to "cases" arising under federal laws. The jurisprudential understanding of what constitutes a "case" has been the subject of much controversy as it has lent itself to court-made doctrine involving pendent jurisdiction.[3] The Supreme Court, in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966), resolved much of the debate over the approach to pendent jurisdiction by making a clear departure from earlier jurisprudential traditions which required a full analysis of the origin of legal claims in order to resolve the jurisdictional question.[4] Prior to *Gibbs*, pendent jurisdiction would lie only if the state claim constituted the same cause of action or where the state claim was "little more than the equivalent of different epithets to characterize the same group of circumstances." *Hurn v. Oursler*, 289 U.S. 238, 246, 53 S.Ct. 586, 590, 77 L.Ed. 1148 (1933).

▮ The Court in *Gibbs* addressed the issue of federal power to hear state law claims with a reflection upon the revolution in jurisprudence exhibited in the Federal Rules of Civil Procedure. Describing the earlier notions of federal power as "unnecessarily grudging," the court wrote:

Pendent jurisdiction, in the sense of judicial *power* exists whenever there is a claim "arising under [the] Constitution,

---

**3.** *See e.g.*, Currie, *Pendent Parties*, 45 U.Chi.L. Rev. 753 (1978); and articles cited by both the majority and dissenting opinions in *Aldinger*, 427 U.S. at 6, n. 6, 96 S.Ct. at 2416 n. 6, 2423 n. 1 (opinion of the Court) and 10, n. 1 (Brennan, J., dissenting).

**4.** It has been urged that original understandings of what constituted a "case" in the early days of the Republic were conditioned by conceptual limitations inherited from medieval England. The term "case or controversy" for jurisdictional purposes was derived from "choses in action" (the precursor to "cause of action") embodied in the now dead writ system, which looked to legal

terms and categories rather than underlying factual accounts. Jurists such as Blackstone assembled the common law as if it provided a writ or "chose in action" for every wrong, and early American jurisprudence continued to understand the legal wrong as a "thing" separate and apart, though exhibited by the facts of a particular situation. *See* Kennedy, "The Structure of Blackstone's Commentaries," 28 Buff.L. Rev. 209, 231–72 (1979). It may well be that prior to *Gibbs* this jurisprudential tendency to reify social relations in the form of legal categories had overwhelmed the attempt to define jurisdictional power.

the Laws of the United States, and Treaties made, or which shall be made, under their Authority ..." U.S. Const., Art. III, Section 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." ... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he [or she] would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Id.*, 383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original). In determining whether judicial power exists in the first instance, the Court in *Gibbs* instructed federal courts to examine the facts without superimposing an *a priori* image of the state or federal legal claims. If the facts are such that plaintiff states a substantial federal claim along with other legal claims and "would ordinarily be expected to try them all in one judicial proceeding," the court has the power to decide all the legal issues which can be fixed upon it.[5]

■ The fact that pendent state claims are pressed against a party not already in court does not necessarily negate a finding of federal judicial power. Recognizing the change in the jurisprudential underpinnings put forth in *Gibbs*, the Court, in *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), refused to support the district court's ruling that judicial power does not extend to pendent parties:

It is true that numerous decisions throughout the courts of appeals since *Gibbs* have recognized the existence of judicial power to hear pendent claims involving pendent parties where "the entire action before the court comprises but one constitutional 'case'" as defined in *Gibbs*. [The Ninth Circuit ruling in *Hymer v. Chai*, 407 F.2d 136 (1969)] stands virtually alone against this post-*Gibbs* trend in the courts of appeals, and significantly, *Hymer* was largely based on ... a decision which predated *Gibbs* and the expansion of the concept of pendent jurisdiction beyond the narrow limits set by *Hurns v. Oursler* [289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933)]. Moreover, the exercise of federal jurisdiction over claims against parties as to whom there exists no independent basis for federal jurisdiction finds substantial analogues in the joinder of new parties under the well-established doctrine of ancillary jurisdiction in the context of compulsory counterclaims under Fed.Rules Civ.Proc. 13(a) and 13(h), and in the context of third-party claims under Fed.Rule Civ.Proc. 14(a).

411 U.S. at 713–15, 93 S.Ct. at 1797–99. Because the Court affirmed the district court's dismissal on discretionary grounds, it did not conclusively determine the question of federal power. Under the principles stated in *Gibbs* and others cited above, this

---

5. At least in this circuit it appears that judicial power will not be extended to pendent parties where the main claim is based upon diversity of citizenship rather than a federal question. *See Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1009 (7th Cir.1982) (reaffirming the rule of *Hampton, supra,* that "pendent party must meet the amount in controversy requirement of the diversity jurisdiction"). It is unclear whether the refusal to entertain pendent party jurisdiction in diversity actions is because of a fundamental difference between diversity and federal question claims, or because federal courts disfavor diversity jurisdiction and do not want to expand the reach of federal jurisdiction over state claims. One compelling reason for pendent jurisdiction is absent in diversity actions since they lack federal law issues which parties

might prefer to litigate in federal court. The rule against pendent party jurisdiction in diversity cases might also find root in constitutional concepts. Since Article III extends judicial power in federal question cases because of the issues involved, the joinder or other issues, even where it brings in other parties, is consistent with the understanding of "cases" put forth in *Gibbs*. However, Article III defines diversity jurisdiction according to the parties, not the issues, so the logic behind the definition of "cases" does not parallel the *Gibbs* rationale. *See also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (because joinder of non-diversity defendant would destroy complete diversity, plaintiff could not circumvent congressional intent by use of pendent party jurisdiction).

court believes that such judicial power exists.

Although *Gibbs* instructed federal courts to look to the facts to determine if all the claims presented constitute one constitutional case, post-*Gibbs* cases make clear that statutory issues continue to affect this determination. Where the statute dictates that a party is not to be included in the same case as the federal question, the district court has no jurisdiction. In *Aldinger*, for example, the Supreme Court then believed that Congress had drafted the statutory language incorporated into § 1983 with the intent to exclude municipalities from such claims, a belief overruled two years later in *Monell*.[6] In *Aldinger*, therefore, the Court held that a county could not be joined as a pendent party to a § 1983 case, despite potential state law liability arising out of a common nucleus of operative facts. *Aldinger* simply recognizes the constitutional rule that where federal question jurisdiction is created by statute, courts should follow any congressional determination of what constitutes a case for the purposes of pendent jurisdiction. The holding in *Aldinger*, however, does not alter the fundamental rule in *Gibbs* that the determination of federal judicial *power* does not begin with *a priori* images of legal claims, but instead rests upon an analysis of the facts.

Plaintiff complains here of his arrest by the City police officers and the subsequent injuries which he allegedly suffered. His claims arise from one central transaction or occurrence and include a substantial federal right embodied in § 1983. It is true that liability on the federal claim might flow only from occurrences following the arrest, that the false imprisonment claim may impose liability because of occurrences before the arrest, and the tort action against Penn Trailers centers only around the use of the police van. But this court must analyze plaintiff's case without regard to the divergent nature between the federal and state theories of recovery. Since all these claims arise in connection with plaintiff's arrest, there is no reason to determine that each claim represents a different case. Further, unlike *Aldinger*, there is no suggestion that the intent behind § 1983 was to prohibit claims against parties situated similarly to the moving defendants. Because the allegation of injury encompasses a common nucleus of facts, this court believes that plaintiff could properly adjudicate all his claims in one proceeding.

## The Discretionary Element in Pendent Jurisdiction

Once the district court has determined that judicial power exists, it must nevertheless determine whether to deny jurisdiction. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in consideration of judicial economy, convenience and fairness to litigants...." *United Mine Workers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. Where the balance of factors weighs against pendent jurisdiction over a state claim, the district court should deny plaintiffs the opportunity to present them in federal court.[7] *See also Moor v. County*

6. *Monell* expressly overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) "insofar as it holds that local governments are wholly immune from suit under Section 1983." One year after *Monell* the Court in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372, n. 12, 98 S.Ct. 2396, 2402 n. 12, 57 L.Ed.2d 274 (1978), stated: "But *Monell* in no way qualifies the holding of *Aldinger* that the jurisdictional questions presented in a case such as this one are statutory as well as constitutional." While statutory questions remain relevant to jurisdictional determinations, the holding that municipalities can never be joined on pendent claims to § 1983 cases is somewhat clouded today.

7. While the district court retains discretion in pendent jurisdiction questions, court decisions in other areas make clear that plaintiffs, as masters of the complaint, should not ordinarily be denied the ability to chose the forum for litigation. *See, e.g., Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) ("abstention from the exercise of federal jurisdiction is the exception, not the rule"); *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 740 F.2d 566, 569 (7th Cir.1984) ("Where a district court properly has subject matter jurisdiction in a case, it has a 'virtually unflagging obligation' to exercise that jurisdiction").

*of Alameda,* 411 U.S. at 712, 93 S.Ct. at 1797.

■ Courts have identified factors which are to be taken into consideration so that "needless decisions of state law [can] be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. If state claims predominate, or present novel and complex questions which are better left to resolution by state courts, a district court may deny jurisdiction and dismiss without prejudice. The joinder of new parties on the pendent claim may also affect the "discretionary" half of the court's determination. Finally, where the federal claim has been dismissed a court may deny jurisdiction over the pendent claims. *But see, Justice v. Town of Blackwell,* 820 F.2d 238, 241 (7th Cir.1987) ("Undeniably there are cases where pendent party jurisdiction may preserve an action as to the state claims even though the federal civil rights claim has been dismissed"). On the other side of the equation, the court should consider issues of judicial economy and cost to litigants. Also relevant is any applicable federal policy to grant or deny parties the right of access to federal court on particular claims. *See, e.g., Moore v. Marketplace Restaurant, Inc.,* 754 F.2d at 1361 (Posner, J.) ("Access to a federal forum was intended to be a right of section 1983 plaintiffs, and would be impeded by preventing the joinder of a closely related claim against private defendants in federal court under the pendent parties concept.")

■ The tort action against Penn Trailers focuses upon similar factual issues in the § 1983 claim against the City and the police officers. The accounts of both claims will substantially overlap as to what happened to plaintiff after his arrest, and both claims will no doubt require testimony on truck design and safety. It does not appear at this point that the separate legal claims would confuse a jury or muddle the defense of any of these parties. Further, the state tort claim against Penn Trailers does not appear to be a novel and complex question of state law, nor does it seem to be one which essentially should be resolved by a state court. On the facts as alleged, we find pendent jurisdiction over Penn Trailers to be proper.

■ The false imprisonment claim against Roberts and UPS, however, presents a different situation. Since plaintiff does not allege in his amended complaint that he was wrongfully arrested in violation of his constitutional rights, the account leading up to the arrest is separate from the alleged injuries received while being transported in the compartment of the police van. While the fact of injury will be relevant to plaintiff's damage claim against Roberts and UPS, the reasons why he was injured are not. If the motion is denied, those defendants will then be required to participate in federal court in a case in which there are no federal claims against them and in which the federal claims are likely to predominate. Accordingly, the elements of judicial economy and fairness to the litigations do not appear to be present. We therefore grant defendants Roberts' and UPS' motion to dismiss for lack of subject matter jurisdiction.[8]

### CONCLUSION

The motion to dismiss by the City of Chicago, R. Defelice and P. Kavarital for failure to state a claim is denied. The motion to dismiss defendant Penn Trailers on jurisdictional grounds is also denied. The court grants the motion of defendants UPS and Roberts to dismiss.

---

8. Even if plaintiff has not already filed a false imprisonment claim in state court, his claim will not be barred by Illinois' statute of limitations provisions since Ill.Rev.Stat. ch. 110, ¶ 13–217, allows for a one-year extention from the time when a United States District Court dismisses for lack of subject matter jurisdiction.