**David EDWARDS, Jr., Plaintiff,**

v.

**Kerry E. MAY, Charles Fountain, and City of Chicago, a Municipal Corporation, Defendant.**

**No. 89 C 3102.**

United States District Court, N.D. Illinois, E.D.

July 28, 1989.

Eugene I. Pavalon, Pavalon, Gittler, & Greenfield, Chicago, Ill., for plaintiff.

Diane M. Pezanoski, William A. Wenzel, Judson H. Minor, Corp. Counsel, City of Chicago Law Dept., Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendant, City of Chicago, to dismiss Counts II, III and V of plaintiff's complaint. For the reasons stated below, defendant's motion is granted, and the remaining Counts, I and IV, are dismissed *sua sponte.*

## FACTS

Plaintiff's complaint is based upon the alleged use of excessive force during the period between his arrest and arraignment and the alleged denial of medical attention. Specifically, plaintiff alleges that, on the date of his arrest for burglary, the defendant police officers, while returning plaintiff from the Criminal Court building at 26th and California (where he was taken in an unsuccessful attempt at arraignment) to the 21st District police station, handcuffed him, placed him in a squadrol,[1] without securing him with a seat belt, and "intentionally increased their speed" over paved, public city streets which caused plaintiff to be jostled about and sustain serious injuries. Having done so, they then ignored plaintiff's complaints of injury and requests for medical attention.

## DISCUSSION

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.,* 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus,* 603 F.2d 1266 (7th Cir.1979). The

---

1. The term "squadrol" is often used to refer to various types of vehicles. Counsel have orally stipulated that the squadrol in which plaintiff was transported was what was commonly called a "paddy wagon," a term now out of favor in deference to the preferred term "police van" for reasons not relevant to this opinion.

court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

The court will address the federal claim first, since, if it is deficient, the court need go no further.

### COUNT V

■ Count V is a 42 U.S.C. § 1983 claim against the City [2] alleging that violations of plaintiff's fifth, eighth and fourteenth amendment rights resulted from the defendant police officers' conduct undertaken pursuant to an official policy or custom of the City. Count V is dismissed. Plaintiff simply alleges that the City has a policy of failing to properly reprimand the behavior of the police officer defendants and ratifying similar prior misconduct by the police officer defendants and other officers. Plaintiff's boilerplate conclusory allegations of an official policy or custom are insufficient. *See Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985). Plaintiff must allege specific facts which, if true, tend to support his allegation that a municipal custom or policy exists which could have caused his injury. 760 F.2d at 768–69.

Plaintiff, in his Response To Defendants' Motion To Dismiss, refers for support to cases in which a policy of transporting pretrial detainees handcuffed in the back of squadrols was sufficiently stated. *See Montgomery v. City of Chicago*, 670

F.Supp. 230 (N.D.Ill.1987); *Brown v. City of Chicago*, 573 F.Supp. 1375 (N.D.Ill.1983). However, Count V contains only allegations of a policy of failing to reprimand. It is Count III, a state law negligence claim against the City, which alleges a policy of transporting arrestees in the rears of squadrols, with their hands cuffed behind their backs, unrestrained from being thrown about the vehicle. However, the paragraph containing this allegation was not incorporated into Count V, the § 1983 claim. Moreover, even it it were incorporated, given the absence of specific factual allegations, Count V would still remain deficient under *Strauss*.

In the alternative, even if plaintiff were to properly plead a custom or policy, neither fifth nor eighth amendment protections are implicated here. The fifth amendment applies only to claims made against *federal* officials. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Monitor v. City of Chicago*, 653 F.Supp. 1294, 1299 (N.D.Ill.1987). Eighth amendment protections attach only after conviction. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1871–1872 n. 16, 60 L.Ed.2d 447 (1979); *Anderson v. Gutschenritter*, 836 F.2d 346, 348 (7th Cir.1988); *Hawkins v. Poole*, 779 F.2d 1267, 1269 (7th Cir.1985). These are hardly recent developments in constitutional law. Counsel for plaintiff is reminded of his duties under Fed.R.Civ.P. 11.

This leaves only the allegation of fourteenth amendment violations resulting from excessive force and denial of medical attention to support plaintiff's § 1983 claim.[3] Addressing whether plaintiff has properly stated a claim under § 1983 for excessive force occurring between plaintiff's arrest and arraignment requires the

---

**2.** Count V begins: "The plaintiff, David Edwards, Jr., complaining against the defendants, Kerry E. May and Charles Fountain, states as follows:" However, Count V prays for relief against the City and those allegations unique to Count V refer to the City's conduct. Therefore, the court will assume that the introduction or preamble to Count V is in error and plaintiff meant to complain against the City.

**3.** It may not be accurate to state that plaintiff

has made specific allegations of a fourteenth amendment violation in Count V. Count V, as pled, alleges violations of the fifth and fourteenth amendments and of the eighth and fourteenth amendments. Therefore, it appears that plaintiff is invoking his fifth and eight amendment rights as incorporated by the fourteenth amendment. Nevertheless, the court will liberally interpret Count V to allege a violation of the fourteenth amendment.

court, in the first instance, to determine the appropriate standard under which to review the sufficiency of his allegations.

Section 1983 does not in itself convey substantive rights, but only provides a conduit through which to vindicate federal rights. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). Federal courts have struggled with both the proper constitutional basis for § 1983 excessive force claims and the standard under which they should be evaluated. Depending upon plaintiff's status at the time the excessive force was allegedly exerted, various provisions have been applied—among them the fourth, fifth, eighth and fourteenth amendments. Courts also have, in various situations, applied the concept of substantive due process as the source of the rights allegedly infringed. Yet, the Supreme Court has now rejected the practice of applying a "single generic standard", such as the substantive due process test, to all § 1983 claims. *Graham v. Connor*, — U.S. ——, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). Reviewing a § 1983 claim requires first "indentifying a specific constitutional right allegedly infringed" and then judging the claim by "reference to the specific constitutional standard which governs that right." *Id.*

Where plaintiff is a convict in custody, it is established that the eighth amendment's protections against cruel and unusual punishment govern. *Bell*, 441 U.S. 520, 99 S.Ct. at 1864. With respect to the use of excessive force in effecting an arrest and initial seizure, the fourth amendment and its "reasonableness" standard has only recently been adopted as exclusive. *See Graham*, 109 S.Ct. at 1871; *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir.1987) (overruling *Gumz v. Morrissette*, 772 F.2d 1395 (7th Cir.1985)), which had employed substantive due process criteria including the "shock the conscience" test, because the fourth amendment was specifically directed towards claims arising from arrest and seizure). However, where the claim alleges, as does plaintiff's, that the use of excessive force occurred at the "post-arrest pre-charge" stage, the Seventh Circuit has

rejected the use of the fourth amendment to determine the limits of permissible police conduct. *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir.1989). The fourth amendment was deemed unsuitable because the concepts around which its interpretation focuses, "probable cause" and the "reasonableness" of the force used in a seizure in comparison to the danger the suspect posed to the community and the arresting officers, are no longer applicable once the arrestee is in custody. *Id.*

*Wilkins* involved a claim of infliction of severe emotional distress in a custodial interrogation during the post-arrest precharge stage. Reserving a final resolution of the propriety of using the "nebulous and historically much abused concept of substantive due process" as a "gap filler" between the protections of the fourth and eight amendments, the court held that the claim was properly evaluated under the fourteenth amendment's guarantee against deprivation of liberty without due process. Liberty was defined to include freedom from severe mental distress, as well as bodily harm. 872 F.2d at 195. Setting a "high threshold," the *Wilkins* court required the plaintiff to "show misconduct that a reasonable person would find so beyond the norm of proper police behavior as to shock the conscience, and that is calculated to induce not merely momentary fear or anxiety, but severe mental distress ..." *Id.* The heated and intensely confrontational atmosphere inherent in an interrogation requires such a high threshold, lest the federal courts "undertake to monitor the details of police interrogations, ..." 872 F.2d at 195. Proof that the misconduct was *calculated* to cause severe mental distress is also necessitated by the nature of the claim. Absent are observable physical injuries as tangible evidence of the level of misconduct.

The City asserts that *Wilkins* governs. Did the Seventh Circuit intend the fourteenth amendment due process as the "right" and the rule in *Wilkins* as the "standard" to govern all post-arrest precharge claims? The use of the fourteenth amendment due process clause as a right is

supported by the discussion of "liberty's" guarantees against the infliction of bodily harm without due process. 872 F.2d at 195. The court, though not hiding its preference, expressly refused to resolve "the jurisprudential debate" between reliance upon substantive due process and textually based rights. *Id.* Plaintiff's claim will be analyzed under the fourteenth amendment due process clause. Under *Wilkins*, the fourteenth amendment due process clause, is certainly an appropriate basis upon which to seek relief for claims arising from post-arrest pre-charge conduct. *See also, Anderson*, 836 F.2d 346.

What then of the applicability of the test announced in *Wilkins* to the instant case? Adjusting the second prong of the two pronged *Wilkins* test to facilitate its application to claims of bodily injury by simply substituting "bodily harm" for "mental distress" would create a standard requiring a § 1983 plaintiff to prove, in addition to misconduct that a reasonable person would find so beyond the norm of proper police behavior as to shock the conscience, that the misconduct was calculated to induce severe bodily harm. An across the board application of *Wilkins* to all post-arrest pre-charge claims, by such a mechanical transformation, was probably not intended by the Seventh Circuit. *Wilkins* would immunize from constitutional protection all claims alleging use of physical force during the post-arrest pre-charge stage exceeding that necessary to insure that the individual conforms to the rules of custody, but just short of that *calculated* to cause *severe* bodily harm.[4]

Applied to all post-arrest pre-charge claims, *Wilkins* sets a stricter standard than either the four point test policing violations of substantive due process announced in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973) (the need for force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadisically for the very purpose of causing harm") or even the "shock the conscience" test of *Gumz*, 772 F.2d at 1400 ("[u]se of force by a state officer is unconstitutional if it 1) caused severe injuries 2) was grossly disproportionate to the need for action under the circumstances, and 3) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience"). This is because force which "caused severe injuries," even if "inspired by malice" and "grossly disproportionate to the need," need not always have resulted from a state of mind that has reached the level of *calculating* to cause *severe* injury, as is required under *Wilkins*.

Thus, the court rejects the notion that the two pronged *Wilkins* test, as announced, was intended to govern all § 1983 claims of post-arrest pre-charge excessive force in violation of fourteenth amendment due process liberty rights. The court does not mean to suggest that every allegation of bodily injury by a government official results in "federal case." "Certainly, the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery which makes actionable any intentional and unintentional and unpermitted contact with the plaintiff's person or anything attached to it and practicably identified with it, ..." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973). Yet, the first prong's requirement that the misconduct "shock the conscience" adequately ensures that the threshold for constitutional violations remains well above the level for tort law violations. *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1298 (7th Cir.1989) (not every tort is a constitutional violation); *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir.1989). The second prong of the *Wilkins* test, on the other hand, while suited for application to claims of infliction emo-

---

**4.** *See Ware v. Reed,* 709 F.2d 345, 351 (5th Cir.1983) ("we are firmly of the view that the use of physical violence against a person who is in the presence of the police for custodial interrogation, who poses no threat to their safety or that of others, and who does not otherwise initiate action which would indicate to a reasonable, prudent police officer that the use of force is justified, is a constitutional violation.")

tional distress, sets too high a threshold for claims based upon allegations of bodily injury.

■ Having gone this far with its analysis, the court need not go further to determine either what alterations to the second prong of the *Wilkins* test would make it suitable for application to bodily injury claims or whether other substantive due process criteria, such as those announced in *Gumz*, are appropriate. Under either of these alternatives, the defendants' conduct would still have to "shock the conscience." The court holds, as a matter of law, that it does not.

Plaintiff alleges that the defendants intentionally increased the speed of the squadrol so as to cause plaintiff, who was handcuffed and not wearing a seat belt, "to be violently jostled, bounced and thrown about." Of course, unless, plaintiff and the police officer defendants were the victims of "unintended acceleration," the speed of the vehicle was increased by the driver *intentionally* depressing the gas pedal. Yet, plaintiff clearly is alleging more. He is attempting to characterize defendants' conduct as "intentional," in other words, defendants acted intentionally, rather than merely negligently, in injuring plaintiff. While intent may be pled generally, Fed.R.Civ.P. 9(b), this legal conclusion is insufficient to plead a constitutional claim, in the absence of any supporting factual allegations from which the court may draw inferences.

Despite plaintiff's the use of the label "intentional," based upon plaintiffs' own factual allegations, defendants' conduct was negligent or, at most, reckless behavior falling far short of "conscience shocking" conduct. Even accepting plaintiff's characterization of defendants' conduct as intentional, defendants themselves were riding in the very vehicle in question. This precludes the probability that it was driven

in a manner which would "shock the conscience," unless the court were to presume (which it will not) that the defendants had absolutely no regard for their own well-being. In fact, the police officer defendants' conduct of merely increasing the speed of the vehicle, even if in violation of the posted speed limt (plaintiff does not actually allege that the police officer defendants were speeding), is not even sufficient to constitute reckless driving under state law. *See People v. Ziegler*, 78 Ill.App.3d 490, 33 Ill.Dec. 436, 441, 396 N.E.2d 1160, 1165 (1st Dist.1979) (excess speed alone does not constitute wilful and wanton misconduct). Plaintiff has failed even to allege that the vehicle was driven eratically.[5]

Factoring in the manner in which plaintiff was transported—handcuffed and unrestrained in the back of a squadrol—still does not raise defendants' conduct to a "shock the conscience" level. The court respectfully refuses to follow *Brown* and *Montgomery*. *Brown* recognized the difficulty of characterizing the City's conduct in questioning, without deciding, "[w]hether the City could be held liable for negligence in selecting paddy wagons and handcuffing procedures, or whether reckless or intentional action must be shown, ..." 573 F.Supp. at 1379. *Montgomery* implied an allegation of reckless disregard, from pleading of factual circumstances similar to the instant case, which it found sufficient to survive dismissal. 670 F.Supp. at 232. The court cannot agree that the city's conduct was reckless in the constitutional sense as defined in *Archie v. City of Racine*, 847 F.2d 1211, 1218–19 (7th Cir.1988) (en banc). More importantly, neither *Montgomery* nor *Brown*, which predate *Wilkins*, evaluated the pleadings under a "shock the conscience" standard. Even assuming that the City was reckless in selecting its "policy," not all reckless behavior shocks the conscience. The court holds

---

5. This discussion of plaintiff's fourteenth amendment claim against the City is predicated upon the pleading of a "policy" making the City responsible "constitutionally" for all of the individual officers' actions. As noted in *Brown*, 573 F.Supp. at 1379, the manner of driving the vehicle, which plaintiff has not pled was pursuant

to a "policy," may be an intervening event which supersedes causally any policy the City may have in transporting arrestees, *see Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir.1981) (policy must cause injury), or it may be foreseeable.

that, as a matter of law, even if everything plaintiff has alleged is true, the City's conduct in selecting handcuffing procedures and squadrols as modes of transportation does not shock the conscience.

Moreover, taking as true plaintiff's allegations of serious injury, where defendants' conduct does not shock the conscience, that it results in serious injuries does not serve to raise the conduct to a "shock the conscience" level. To hold otherwise would reduce to mere negligence, which may cause serious injuries and even death, the acceptable grounds for a constitutional violation. *Archie,* 847 F.2d at 1219 (even grossly negligent conduct is not actionable under the due process clause of the fourteenth amendment).

Finally, there is plaintiff's claim that defendants "failed to acknowledge and respond to the empathetic (sic) complaints of pain and injury of the plaintiff," "failed to administer medical assistance" and "failed to contact emergency medical personnel."

Although plaintiff had yet to be charged, his status is analagous to that of a pretrial detainee. A pretrial detainee's § 1983 claim for denial of medical treatment arises from the due process clause of the fourteenth amendment, rather than the eighth amendment's prohibition against cruel and unusual punishment. *Anderson,* 836 F.2d at 348–49; *Van Cleave v. United States,* 854 F.2d 82, 83 (5th Cir.1988); *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988); *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir.1986); *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985). However, because a pre-trial detainee's rights are at least as great as the eighth amendment rights of a convicted prisoner, eighth amendment protections are used as a minimum standard for determining the due process rights of a pretrial detainee. *See Anderson,* 836 F.2d at 349; *Jones,* 781 F.2d at 771. A prisoner's eighth amendment rights are violated where there is deliberate indifference to the prisoner's serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The same standard will be applied to plaintiff's claim. *See*

*Anderson,* 836 F.2d at 349 (applying "deliberate indifference" standard to pre-trial detainees claim based on failure to protect from assault, but indicating that "deliberate indifference" standard applies to all fourteenth amendment claims by pre-trial detainees); *Danese v. Asman,* 875 F.2d 1239, 1243 (6th Cir.1989).

■ Plaintiff's allegations do not complain of a deliberate indifference to his serious medical need. Reduced to its base, plaintiff's claim is that he sustained serious injuries from "jostling" during a rough ride. There is no allegation that the vehicle plaintiff was riding in was involved in an accident. The complaint alleges neither that plaintiff complained of a *serious* medical need nor that a *serious* medical need was evident. That plaintiff complained of an injury is not sufficient. In the alternative, even if he had complained of a *serious* medical need and a *serious* medical need not been evident, the defendants could not have reasonably believed that plaintiff suffered such serious injuries from "jostling" and thus were not deliberately indifferent when they refused to obtain immediate medical attention for the plaintiff. *See Walmsley v. City of Philadelphia,* 872 F.2d 546, 552 (3d Cir.1989) (officer not deliberately indifferent where there is no indication that he had any inkling that plaintiff may have suffered serious injuries from a mere fist fight); *Rasmussen v. Larson,* 863 F.2d 603 at 606 (8th Cir.1988) (defendants acted in objectively reasonable manner); *Martin,* 849 F.2d at 870–71.

## COUNT IV

The police officer defendants have not filed a motion to dismiss the Counts directed at them. However, Count IV, a § 1983 claim, contains allegations of fifth, eighth and fourteenth amendment violations which suffer from the same deficiences as discussed above. Therefore, the court, *sua sponte,* dismisses Count IV.

## STATE LAW CLAIMS

The federal claims having been dismissed, the remaining state law claims, Counts I, II, and III, are dismissed, as to

all defendants, without prejudice, for lack of subject matter jurisdiction. *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1491 (7th Cir.1988).

## CONCLUSION

The complaint is dismised in its entirety. Plaintiff is given leave to amend, provided he does so within 21 days of the date of this order. If he fails to do so, the dismissal of the federal claims, Counts IV and V, will be with prejudice.

IT IS SO ORDERED.